629 P.2d 696

Robert L. CURTIS, Claimant-Respondent,

v.

SHOSHONE COUNTY SHERIFF'S OFFICE, Employer, and State Insurance Fund, Surety, Defendants-Appellants,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant-Respondent.

No. 13268.

Supreme Court of Idaho.

June 4, 1981.

Philip E. Dolan, Coeur d'Alene, for defendants-appellants.

Thomas A. Mitchell, Coeur d'Alene, James P. Keane, Kellogg, for claimant-respondent.

DONALDSON, Justice.

Defendants-appellants Shoshone County Sheriff's Office and State Insurance Fund appeal an award by the Idaho Industrial Commission of total permanent disability benefits to Mr. Robert L. Curtis and a dismissal of Mr. Curtis' claim against the Idaho Industrial Special Indemnity Fund. Defendants-appellants seek to have the matter remanded to the Industrial Commission for further proceedings to determine whether Mr. Curtis is totally and permanently disabled. In the alternative, they allege that a portion of the liability for payment of compensation benefits should be allocated to the Idaho Industrial Special Indemnity Fund.

On October 21, 1976, Mr. Curtis was injured in the course of his employment as undersheriff of Shoshone County, Idaho. The injury resulted when Mr. Curtis and a fellow officer, Vic Lees, attempted to arrest a large, intoxicated male. During the course of the arrest, the intoxicated man grabbed Mr. Curtis around the neck, threw him on the ground, and landed on him.

At the time of the October 21st incident, the claimant was 60 years of age. He had quit school when he was in the tenth grade. His work experience includes working as a ranchhand, a plaster board assembly line worker, a logger, a miner, a mechanic, an equipment operator, an owner/operator of an ice cream/hamburger drive-in restaurant, the Osburn Chief of Police, a juvenile probation officer, and a Shoshone County police officer. According to Dr. Gnaedinger, the claimant's medical problems before October 21, 1976, did not prevent him from obtaining and retaining employment but prevented him from seeking work that required strenuous exertion such as mining or logging.

The record indicates that the claimant has had several medical problems throughout his life. In 1956, his back and hips were severely injured when he was pinned under an overturned dozer. His back was reinjured while lifting a shaft at work in 1957. The reinjury required surgical removal of two disks and some fusion. After the operation, the claimant signed a compensation agreement in which he was rated as having a permanent partial disability equal to 40% of the loss of a leg at the hip. Evidence in the record indicates that prior to the October 21st accident, the claimant was unable to stay comfortably in one position very long or lift very much weight because of his back. Furthermore, claimant testified that prior to October 21, 1976, that his back pain was so severe at times that it caused him to fall to the floor. In about 1959, claimant accidentally cut off his left index finger while sawing boards to build a table for his drive-in restaurant. While police chief he wore a full body brace almost continuously for a couple of years. Other medical problems include an ulcer and a hiatus hernia.

As a result of the October 21st incident, claimant had pain and weakness in his right arm and pain in his neck. Also, claimant claims that he has needed to increase the wearing of his back brace to the point where he now must wear it almost all of the time. Although Dr. Gnaedinger's and Dr. Brunjes's medical reports were admitted by the Industrial Commission, Dr. Gnaedinger was the only doctor to testify and did so without the assistance of notes or his office records. He testified that in regards to the October 21st injury he referred Mr. Curtis to specialists who performed thoracic outlet syndrome surgery and a laminectomy for a herniated disk. The disk removal brought the claimant's arm some relief but he still has weakness, and at times, cramping in the arm.

Mr. Curtis is unable to extend his neck at all and has approximately thirty percent of normal neck rotation to either side. Since Mr. Curtis' thoracic outlet syndrome surgery, he has developed a severe allergic reaction which sometimes causes his tongue, face and feet to swell. The cause of the reaction is unexplained. Claimant presently controls the allergy through medication. Dr. Gnaedinger testified that he did not

believe that the back pain got worse because of the October 21st accident. Curtis testified that not only has his back condition gotten worse as a result of the October 21st accident but he has had to take medications for allergy, an ulcer, and pain.

Based on medical factors, Dr. Gnaedinger rated Mr. Curtis' degree of impairment as a result of the October 21st accident as twenty percent of the total man and his degree of impairment as a result of everything as one hundred percent of the total man. He did not consider Mr. Curtis' age, sex, education, economic, or social environment in making these impairment evaluations.

In a decision awarding Mr. Curtis total permanent disability payments, the Industrial Commission made a number of findings of fact (F/F) and conclusions of law (C/L), some of which are the following:

(1) The October 21st incident aggravated Mr. Curtis' previously existing back condition. F/F II.

(2) As a result of the October 21st accident, Mr. Curtis is totally and permanently unable to engage in any gainful activity for which any reasonable stable market exists. F/F VIII.

(3) Mr. Curtis did mostly manual labor and was in the "odd-lot" category. C/L I.

(4) The defendants failed to establish any gainful activity in which appellant could engage. C/L I.

(5) Mr. Curtis' disability from the accident of October 21, 1976,

"can be determined by finding his permanent disability before that accident and subtracting that from 100%.... While the claimant had several physical impairments before October 21, 1976, none of these impairments constituted any hindrance to obtaining employment or performing the activities required by his employment. Because the claimant's ability to engage in gainful activity before October 21, 1976, was not reduced, he had no permanent disability at that time. Therefore, 100% of the claimant's disability is due to the accident of October 21, 1976. So the employer and the surety are

liable for all benefits due the claimant. The Industrial Special Indemnity Fund is not liable to the claimant for any workmen's compensation benefits." C/L III.

■ The scope of our review in workmen's compensation cases is established both by the Idaho Constitution, Art. 5, § 9, and by statute, I.C. §§ 72–724, 72–732. This Court only has the authority to reverse a decision of the Commission when its decisions are unsupported by "any substantial competent evidence," I.C. § 72–732(1), or are not supportable as a matter of law, Idaho Constitution, Art. 5, § 9. *Sykes v. C.P. Clare & Co.,* 100 Idaho 761, 605 P.2d 939 (1980).

■ This Court has made it clear that a workmen's compensation claimant has the burden of proving that an injury arising out of and in the course of his employment was the probable cause or a probable contributing cause of his compensable disability. *Dean v. Dravo Corporation,* 95 Idaho 558, 511 P.2d 1334 (1973). The record in the case at bar contains substantial competent evidence to support the Industrial Commission's award to Mr. Curtis of total permanent disability. Therefore, we affirm the award. As admitted by the Sheriff's Office counsel at oral arguments, the primary issue before this Court is not the Industrial Commission's finding of total permanent disability but is the Industrial Commission's refusal to allocate part of the responsibility for those payments to the Idaho Industrial Special Indemnity Fund.

The liability of the Idaho Industrial Special Indemnity Fund is controlled by I.C. § 72–332 which states:

"PAYMENT FOR SECOND INJURIES FROM INDUSTRIAL SPECIAL INDEMNITY FUND.—(1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the preexisting impairment and the subsequent injury or occupational disease or

by reason of the aggravation and acceleration of the preexisting impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the special industrial indemnity fund.

(2) As used in this law, 'permanent physical impairment' means any permanent condition, whether congenital or due to the injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed. [I.C., § 72–332, as added by 1971, ch. 124, § 3, p. 422.]"

■ This Court in *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 404 n. 1, 565 P.2d 1360, 1361 n. 1 (1977) explained the operation of I.C. § 72–332 as follows:

"By virtue of I.C. § 72–332 the Fund can become liable for compensation benefits whenever an employee with an existing permanent physical impairment becomes totally and permanently disabled due to an injury arising out of and in the course of his employment. The total and permanent disability must be the result either of the combined effects of the preexisting impairment and the subsequent injury, or of the aggravation and acceleration of the preexisting impairment by the subsequent injury. In such cases the employer and its surety are liable for compensation benefits only for the disability caused by the subsequent and last injury. The Fund pays the remainder of the benefits to which the employee is entitled by reason of his total and permanent disability."

The purpose of second injury funds such as I.C. § 72–332 is to encourage employers to hire partially incapacitated persons and to encourage partially incapacitated workers to seek employment. 11 W. Schneider, Workmen's Compensation § 2304 (1957).

The compiler's note associated with this statute states that the words "this law" in I.C. § 72–332(2) refer to 1971 Idaho Session Laws ch. 124, compiled in the Idaho Code as §§ 72–101 through 72–805. The 1971 Idaho Session Laws also added the following definitions of permanent impairment and permanent disability:

"PERMANENT IMPAIRMENT.—'Permanent impairment' is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability. [I.C., § 72–422, as added by 1971, ch. 124, § 3, p. 422.]"

"PERMANENT DISABILITY.—'Permanent disability' or 'under a permanent disability' results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected. [I.C., § 72–423, as added by 1971, ch. 124, § 3, p. 422.]"

■ Since these three statutory definitions (I.C. §§ 72–332(2), –422, –423) were passed simultaneously by the legislature, we can only conclude that the legislature intended that they define three different, but related, classifications. 1971 Idaho Session Laws ch. 124. This Court in *Thom v. Callahan*, 97 Idaho 151, 156, 540 P.2d 1330, 1335 (1975), explained the interrelationship of "permanent impairment" and "permanent disability" wherein we stated:

" 'Permanent impairment' is the physical abnormality or loss caused by or remaining after the industrial accident. Such impairment is a *basic consideration* in the evaluation of 'permanent disability.'. Evaluation of 'permanent impairment' is a medical appraisal of the effect of the accident-caused loss or impairment

on the claimant's day-to-day activities. 'Permanent disability,' on the other hand, results when the impairment causes a loss or reduction of the claimant's ability to engage in 'gainful activity.' The evaluation of permanent disability is an appraisal of the claimant's present and future ability to engage in 'gainful activity' as it is affected by claimant's permanent impairment and by various non-medical factors." (footnotes quoting I.C. §§ 72–422 through –425 omitted) (emphasis in original).

I.C. § 72–427 further clarifies the interrelationship between "permanent impairment" and "permanent disability" when it states that "[t]he 'whole man' income benefit evaluation for purposes of computing scheduled and unscheduled permanent impairment shall not be deemed to be exclusive for the purposes of fixing the evaluation of permanent disability." "Permanent physical impairment" also interrelates with "permanent impairment" and "permanent disability." "Permanent physical impairment" is any permanent condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemployment. A hindrance or obstacle to obtaining employment or reemployment would exist if the preexisting permanent condition would reasonably cause a potential employer to be reluctant to hire a person because of concerns such as the person's preexisting condition made him a less capable worker, a greater risk in terms of getting injured, or a greater risk in terms of the amount of potential permanent disability that the worker would suffer from an injury. Actual hindrance to one's attempts at obtaining employment is not required.

■ In the case at bar, the Industrial Commission found that Mr. Curtis had several [permanent] physical impairments prior to the October 1976 accident, that he was totally and permanently disabled after the accident, and that the total and permanent disability was the result of the aggravation of his preexisting back condition by the October 1976 injury. Having made these findings, the Industrial Commission recognized that I.C. § 72–332 required the liabili-

ty for payment of Mr. Curtis' compensation benefits be allocated between the Indemnity Fund and the employer and his surety. The Industrial Commission incorrectly held as a matter of law that the employer's and the surety's liability can be calculated by subtracting claimant's permanent disability before the accident from the total compensation due. The Industrial Commission further held that since Mr. Curtis had no pre-accident disability, the entire disability was due to the October 1976 accident. The Industrial Commission's conclusion of law inappropriately ignored I.C. § 72–332(2)'s definition of "permanent physical impairments." I.C. § 72–332 requires no finding of a *permanent disability* prior to the October 1976 accident and does not use such in the allocation of liability between the Indemnity Fund and the employer and its surety. Instead, it requires a finding of a *permanent physical impairment.* I.C. § 72–332 limits the employer's liability to the amount of disability attributable to the particular injury occurring in his employment, in this case, the October 1976 injury. It makes the Indemnity Fund liable for the difference between the compensation that would be payable for the second injury alone and the total compensation due. The ratio of apportionment is for the Industrial Commission to determine. See: *Wilson v. Gardner Associated, Inc.,* 91 Idaho 496, 426 P.2d 567 (1967). Therefore, this matter is remanded to the Industrial Commission for further proceedings consistent with this opinion.

The Industrial Commission made a finding of fact that none of Mr. Curtis' [permanent] physical impairments before October 21, 1976, constituted any hindrance to obtaining employment or performing the activities required by employment. Since the Industrial Commission did not appropriately distinguish between the definitions of permanent physical impairment and permanent disability, it is not clear whether the Industrial Commission meant that there was no hindrance to obtaining or retaining employment or that there was no hindrance that qualified as a permanent disability.

**306**

Since the Industrial Commission can reevaluate this finding of fact in light of the "permanent physical impairment" definition in this opinion, it is unnecessary for us to evaluate it at this time. In reevaluating this finding, the Industrial Commission would defeat the purpose of I.C. § 72–332 if it presumed that the fact that Mr. Curtis was employed precluded his prior injuries or diseases from constituting a hindrance or an obstacle to obtaining employment.

I.C. § 72–804, relied upon by claimant, provides for payment of reasonable attorney fees "[i]f the commission or any court . . . determines that the employer or his surety contested a claim . . . without reasonable ground. . . ." This portion of the statute has been held to bar allowance of attorney fees as part of the costs if the employer's action in contesting the claim was with reasonable grounds. *Wilson v. Garner Associated, Inc., supra.* There are no findings by the Industrial Commission on the issue of whether appellants contested Mr. Curtis' claim "without reasonable grounds." This matter is remanded to the Industrial Commission for determination.

■ It appears from the record of these proceedings that there was no serious contention on appeal that the claimant was not 100% disabled. The claimant was caught between the contentions of the Idaho Industrial Special Indemnity Fund and the Shoshone County Sheriff's Office and its surety, the State Insurance Fund. The claimant was required to hire counsel to brief and prepare for oral argument, as well as, travel from Wallace, Idaho to Boise to argue. Surely the Industrial Special Indemnity Fund and the surety could have made an arrangement to compensate the claimant without causing him further litigation and litigated the allocation issue between themselves. I.C. § 72–804 authorizes "any court before whom any proceedings are brought" to award attorney fees and costs against "the employer or his surety." In this case the employer is the Shoshone County Sheriff's Office and its surety is the State Insurance Fund. I.C. § 72–804 further directs that "[i]n all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission." Attorney fees incurred on this appeal by Mr. Curtis are awarded pursuant to I.C. § 72–804, to be fixed by the Industrial Commission.

Mr. Curtis' total and permanent disability award is affirmed. The allocation of liability for payment of Mr. Curtis' compensation benefits between the Idaho Industrial Special Indemnity Fund and Shoshone County Sheriff's Office and its surety, the State Insurance Fund, is reversed and remanded for further proceedings consistent with this opinion. Costs to respondents.

McFADDEN and SHEPARD, JJ., and SCOGGIN, J., pro tem., concur.

BAKES, C. J., concurs in the result.