677 P.2d 487

**Barbara A. BARTEL, Claimant-Appellant,**

v.

**J.R. SIMPLOT COMPANY, Employer-Respondent,**

**and**

**Argonaut Northwest Insurance Company, Surety, Defendants-Respondents.**

No. 14694.

Supreme Court of Idaho.

Feb. 23, 1984.

person may in good faith supply such necessaries, and recover the reasonable value thereof from the parent."

Emil F. Pike, Jr., of Pike & Berry, Twin Falls, for claimant-appellant.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Boise, for employer-respondent.

SHEPARD, Justice.

This is an appeal by claimant-appellant Bartel from an order of the Industrial Commission awarding Bartel a disability rating of 15% of the whole person, but denying Bartel's claim that she is totally and permanently disabled. We affirm.

Claimant Bartel had been working at the Simplot potato processing plant in Burley, Idaho for some four years when on April 1, 1975, while hand trimming a potato, she noticed a pain in her shoulder and numbness in her arm. Shortly thereafter, her hand became discolored and she was unable to use the right arm. During the following year, claimant consulted numerous physicians, which resulted in a diagnosis of carpal tunnel syndrome. Surgery therefor was performed. Despite the surgery, claimant had persistent pain. For the following three years, claimant consulted numerous other doctors regarding various physical ailments, such as a hiatus hernia which was unrelated to the wrist injury, a lipoma of the breast unrelated to the wrist injury, and pain and numbness in her right hand and shoulder.

At issue here is only the pain and numbness in Bartel's right hand and shoulder. A panel of physicians found and all parties agree that the persistent pain and numbness is due to "conversion reaction hysteria," i.e., an actual physical disability is suffered, which disability is treated and repaired but the symptoms continue in the mind of the claimant because she is deriving "secondary gain," i.e., some benefit from being disabled and unable to work. In the instant case, a psychiatrist testified that the secondary gain was probably that claimant did not want to work, but preferred to stay at home with her family and was obtaining economic benefit therefrom. Although such might appear similar to malingering, the testimony here indicates that the residual pain may be, and probably is, real in the mind of the patient. The testimony is also clear that a person suffering a conversion reaction could and would use the extremity in normal circumstances in a normal fashion and be quite comfortable. However, when that same person is aware of observation by others, the person would use the extremity in a less normal fashion.

The medical testimony is clear that those physicians examining claimant did not believe her contention that she could barely move her arm. The arm gave no indication of atrophy which would result if claimant's contention of non-use were correct. One of the physicians indicated that, during his examination, he noted her ability to move the arm without any indication of pain.

The panel of physicians questioned the severity of claimant's original carpal tunnel syndrome, and stated:

"The panel felt that no further treatment should be afforded her. It is only reenforcing her complaints. This case should be settled. She previously had been discharged as surgically healed with a permanent partial impairment of 8% of the whole person by Dr. Cutler. The panel agrees with this rating for the carpal tunnel syndrome. Also, in addition, they feel that there should be a 7% of the whole person impairment rating for the conversion hysteria which was precipitated and aggravated by the industrial injury."

The testimony of the psychiatrist indicated his belief that indeed claimant's condition would be improved by a return to work and that she should do so. Essential-

ly all of the testimony was undisputed and to the same effect as that outlined above, excepting only the testimony of the claimant herself.

The commission found that claimant had a permanent physical impairment of 8% of the whole person with respect to her carpal tunnel syndrome which has been surgically repaired. In addition, the commission found that she suffers a conversion reaction, the precise cause of which is somewhat obscure because of claimant's other problems unrelated to the accident, and concluded that "giving the benefit of the doubt to the claimant" she should receive an additional 7% of the whole person rating. Neither party disputes that 15% impairment rating.

Claimant, however, continues to argue that she is totally and permanently disabled, although her impairment is only 15% of the whole person. She argues that due to the real pain she experiences from her conversion reaction she is unable to work and hence totally disabled. She argues that the commission ignored competent evidence to that effect, *i.e.*, her own testimony.

The commission found:

"The Commission further finds that the claimant's conversion reaction is relatively mild and that she is able to perform work consistent with her previous employment experience. The Commission finds that the claimant's permanent partial disability, resulting from the accident of April 1, 1975 is properly measured at 15% of the whole person. The claimant is not totally and permanently disabled as a result of the April 1, 1975 injury as she contends in her Application for Hearing."

Claimant asserts in essence that the commission's finding that she could engage in gainful employment is unsupported by and contrary to the evidence. We disagree.

This Court has consistently stated: "this Court will not disturb findings of fact by the Industrial Commission when they are supported by competent, although conflicting, evidence." *Green v. Columbia Foods,*

*Inc.,* 104 Idaho 204, 205, 657 P.2d 1072, 1073 (1983); *Lampe v. Zamzow's, Inc.,* 102 Idaho 126, 626 P.2d 782 (1981); *Logsdon v. Northern Iron & Metals Co.,* 101 Idaho 74, 608 P.2d 877 (1980). There is not only competent evidence as to claimant's employability, but the evidence taken by the commission clearly preponderates in favor of employability. All medical evidence supports the commission's finding.

The order of the commission is affirmed.

DONALDSON, C.J., and BAKES, J., concur.

HUNTLEY, Justice, dissenting.

The findings and conclusions of the Industrial Commission, approved by the majority opinion, are internally inconsistent and contrary to law and therefore I must dissent to minimize the precedential value of this case.

The medical testimony accepted by the Commission is that the claimant has a 15% impairment rating comprised of:

(1) 8% for loss of function; and

(2) 7% for "conversion reaction" or "conversion hysteria".

By definition, "conversion reaction" means the worker truly cannot return to work and therefore is totally disabled.

Thus, the Commission had two legally and factually appropriate decision alternatives, only one of which it could make:

(1) To disallow (disbelieve) the existence of the conversion reaction, and award only 8% permanent partial disability; or

(2) Award permanent total disability or at least a substantial component for nonmedical factors.

Thus the case should be remanded for the entry of consistent findings and conclusions—my view is that the claimant is fortunate that such is not ordered—because the testimony indicates that if either the medical experts or the Commission had fully understood and applied the results which necessarily flow from a diagnosis of "con-

version reaction," the award would have been entered at 8%.

BISTLINE, J., concurs.