692 P.2d 332

Keith HARTLEY, Claimant-Respondent,

v.

MILLER-STEPHAN, Employer, and Truck Insurance Exchange, Surety, Defendants-Respondents,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant-Appellant.

Nos. 14670, 14721.

Supreme Court of Idaho.

Nov. 1, 1984.

Rehearing Denied Dec. 31, 1984.

Paul S. Penland, of Parkinson, Lojek & Penland, Chartered, Boise, for defendant-appellant.

Ryan Peter Armbruster and William James Batt, of Elam, Burke, Evans, Boyd & Koontz, Allen B. Ellis and Max M. Sheils, Jr., of Ellis, Brown, Sheils & Steele, Boise, for defendants-respondents.

## ON DENIAL OF PETITION FOR REHEARING

1984 OPINION NO. 96, ISSUED JULY 25, 1984, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

SHEPARD, Justice.

Claimant Hartley sustained a knee injury while working for the employer herein, Miller-Stephan. Claimant had previously had knee problems, which allegedly constituted a preexisting permanent physical impairment under I.C. § 72–332, so the State of Idaho, Industrial Special Indemnity Fund,

was made a party to this case. The Industrial Commission determined claimant to be an odd-lot employee and awarded him total, permanent disability benefits. The employer/surety and the fund, by this appeal, dispute the commission's findings as to claimant's disability and challenge the finding of claimant's odd-lot status. On the narrow ground that the commission incorrectly characterized claimant's personality disorder as a preexisting physical impairment under I.C. § 72–332, we reverse.

Pursuant to its finding of odd-lot status, the commission awarded claimant 100% total permanent disability, which disability was broken down into the following proportions:

| | | |
|---|---|---|
| 10% | — | Permanent partial impairment, which preexisted the accident, in the form of a personality disorder; |
| 18% | — | Permanent partial impairment, in the form of a damaged knee, 9% being due to the industrial accident and 9% being a preexisting physical impairment; |
| 72% | — | Non-medical factors (age, education, training, skills). |

It is the 10% personality disorder which is problematic in this case. Because we hold that such a personality disorder, which here is not alleged to manifest itself in physical symptoms, cannot qualify as a preexisting *physical* impairment for purposes of imposing liability on the Industrial Special Indemnity Fund, we must reverse the 10% portion of disability which the commission gave for that impairment. We therefore decline to review the other assigned errors, all of which assume a finding of 100% total permanent disability.

The commission found that claimant suffers from a long-term avoidant personality disorder, which the commission determined constituted a preexisting permanent physical impairment of 10% of the whole man. The symptoms of this personality disorder are hypersensitivity to potential rejection, unwillingness to enter relationships, depression, humiliation, anxiety, anger, and impaired ability to function socially. This 10% impairment was factored into claimant's disability rating to arrive at the conclusion that he is totally and permanently disabled as an odd-lot employee. *See Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 686 P.2d 54 (1984); *Lyons v. Special Indemnity Fund*, 98 Idaho 403, 565 P.2d 1360 (1977). The Industrial Special Indemnity Fund contest the characterization of a personality disorder as a preexisting *physical* impairment under I.C. § 72–332.

I.C. § 72–332, which imposes liability on the fund for physical impairments preexisting a disabling industrial accident, provides:

"**72–332. Payment for second injuries from industrial special indemnity account.**—(1) If an employee who has a *permanent physical impairment* from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the industrial special indemnity account.

(2) *'Permanent physical impairment'* is as defined in section 72–422, Idaho Code, provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-exist-

ing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment." (Emphasis added.)

I.C. § 72–422 defines permanent impairment as follows:

"72–422. Permanent Impairment.— 'Permanent impairment' is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability."

▮▮▮ Thus, the definition of preexisting permanent physical impairment, as stated in I.C. § 72–422 and incorporated by reference into I.C. § 72–332, does not expressly limit that term to physical, *i.e.*, anatomical, impairments. Nonetheless, the fund argues that the word "physical" would not appear in the phrase "permanent physical impairment" within I.C. § 72–332, had not the legislature intended some significance thereby. We agree. This Court will assume that the legislature intended what it said in a statute, and we will construe statutory terms according to their plain, obvious, and rational meanings. *Walker v. Nationwide Financial Corp. of Idaho*, 102 Idaho 266, 629 P.2d 662 (1981); *State ex rel. Evans v. Click*, 102 Idaho 443, 631 P.2d 614 (1981), *cert. denied*, 457 U.S. 1116, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982); *Higgenson v. Westergard*, 100 Idaho 687, 604 P.2d 51 (1979). We will not construe a statute in a way which makes mere surplusage of the provisions included therein. *Gimlett v. Gimlett*, 95 Wash.2d 699, 629 P.2d 450 (1981); *Pettis v. Morrison-Knudsen Co., Inc.*, 577 F.2d 668 (9th Cir.1978). Therefore, we discern that the legislature intended the usual, common meaning of the word "physical" when it used that word in I.C. § 72–332. This interpretation of the preexisting physical impairment language in that statute is consistent with our re-

quirement in other cases that the preexisting physical impairment be manifest. *See Royce v. Southwest Pipe*, 103 Idaho 290, 647 P.2d 746 (1982).

▮▮▮ We do not hold that a psychological problem can never be compensated as a work-related injury or impairment. Indeed, the trend among the states in worker's compensation law is toward the opposite result. *See* Larson, Workmen's Compensation Law §§ 42.20–42.24 (1982) (nervous injury resulting from trauma experienced in the scope of one's employment should be compensable as an industrial accident); Larson, *supra*, § 59.32(e) (the "second injury" principle behind industrial special indemnity funds should not be confined to loss of members, and has been extended to preexisting psychiatric conditions). Psychological disorders should be compensated, if they are proximately caused by the job environment and if they result in loss of earning capacity. Likewise, the physical symptoms indirectly caused by psychological illness might come within the definition of physical impairment, preexisting or otherwise. *See Bartel v. Simplot*, 106 Idaho 174, 677 P.2d 487 (1984); Larson, *supra*, § 59.32(e). But here we are faced with the unambiguous statutory language of I.C. § 72–332, directing that the fund should pay for preexisting *physical* impairments. We think the personality disorder described here, apparently lacking any bodily symptoms whatsoever, is simply too tenuous to fall within the legislature's language of I.C. § 72–332.

The commission's order is reversed and remanded for a redetermination of claimant's eligibility to be placed into the odd-lot category, and for further consideration of errors raised on this appeal, in light of this decision and of our holding in *Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 686 P.2d 54 (1984).

Reversed and remanded. Costs to appellant. No attorneys' fees on appeal.

DONALDSON, C.J., BAKES, J., and McFADDEN, J. Pro Tem, concur.

BISTLINE, Justice, dissenting:

The majority today holds that a personality disorder, at least in the absence of physical symptoms or manifestations, does not qualify as a pre-existing physical impairment for purposes of imposing liability on the Industrial Special Indemnity Fund. On that basis the majority reverses the Industrial Commission determination that claimant is 100% permanently disabled. Because I disagree with both the analysis employed by the majority and its conclusion even given that analysis, I respectfully dissent.

The majority correctly concludes that I.C. § 72–332, dealing with the payment obligations of the Industrial Special Indemnity Fund, incorporates by reference I.C. § 72–422, which defines permanent impairment. I.C. § 72–422 provides as follows:

> "72–422. **Permanent Impairment.**— 'Permanent impairment' is *any anatomic or functional abnormality or loss* after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or non-progressive at the time of evaluation...." (Emphasis added)

However, the majority nonetheless persists in reading into this seemingly clear statement a non-existent requirement that the permanent impairment be physical in nature. I believe that the majority, in so doing, makes egregious error.

The legislature is, of course, free to define for itself the pre-existing permanent impairments which it will consider in its compensation of disabled individuals—and it has done so quite clearly in this instance.

In *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981), this Court stated the following after noting that there existed (at that time), three relevant statutory definitions regarding permanent impairment, permanent disability, and the liability for both by the I.S.I.F.:

> "Since these three statutory definitions (I.C. §§ 72–332(2), –422, –423) were passed simultaneously by the legislature, we can only conclude that the legislature intended that they define three different, but related, classifications. 1971 Idaho Session Laws, Ch. 124." *Id.* at 304, 629 P.2d 696.

However, I.C. § 72–332 was subsequently amended [1] in 1981 to incorporate by specific reference the definition of "permanent impairment" contained in I.C. § 72–422. I cannot therefore but conclude that the legislature intended to supplant its original definition of what composed such a permanent impairment for purposes of the I.S.I.F. with that contained in I.C. § 72–422. That is, instead of "three different, but related, classifications," we now have but two—and the classification which the legislature acted to delete from its scheme, i.e., that classification speaking in terms of a permanent *physical* impairment, is precisely the classification upon which the majority now relies.

Turning, then, as we must, to the definition of permanent impairment contained in I.C. § 72–422, there can be no doubt that the present claimant suffers from a compensable permanent impairment. As found by the Industrial Commission and conceded

---

1. At the time of *Curtis v. Shoshone County Sheriff's Office, supra,* I.C. § 72–332(2) provided the following:

   "(2) As used in this law, 'permanent physical impairment' means any permanent condition, whether congenital or due to the injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed."

   I.C. § 72–332(2) was amended in 1981 to read the following:

   "(2) *'Permanent physical impairment' is as defined in section 72–422, Idaho Code,* provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the claimant should become employed. [sic] This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment."

*sub silentio* by the majority, claimant's personality disorder has acted as a functional abnormality which, in combination with other factors,. has at least hindered and probably prevented his gainful employment. Because, under the clear import of I.C. § 72–422, this uncontroverted finding qualifies him as permanently impaired, I would affirm the award of the Industrial Commission.

However, even assuming that the phrase, "permanent physical impairment," should somehow be allowed to temper the very broad language of I.C. § 72–422, I must nonetheless disagree with the proposition that personality disorders should be excluded therefrom. We defined permanent physical impairment, in *Curtis v. Shoshone County Sheriff's Office, supra,* at 305, 629 P.2d 696, as follows:

" 'Permanent physical impairment' is any permanent condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemployment. A hindrance or obstacle to obtaining employment or reemployment would exist if the preexisting permanent conditions would reasonably cause a potential employer to be reluctant to hire a person because of concerns such as the person's preexisting condition made him a less capable worker, a greater risk in terms of the amount of potential permanent disability that the worker would suffer from an injury. Actual hindrance to one's attempts at obtaining employment is not required."

In other words, nothing whatsoever occurs in even our own prior definition of "permanent physical impairment" to limit it to physical injury. Therefore, because the claimant in the present case meets all the criteria previously set forth by this Court

and the legislature with regard to "permanent physical impairment," I would hold that, even under this rubric, the claimant qualifies to receive compensation for his pre-existing personality disorder.

And finally, I believe this Court has today sadly failed in its role and the role of the law in this area. The major purpose of the workmen's compensation law is to provide compensation to make good the loss or impairment of earning power which otherwise might (and in this case will), fall on the worker or his family. *Brock v. City of Boise,* 95 Idaho 630, 516 P.2d 189 (1973). The Workmen's Compensation Act should be accorded a broad and liberal construction, and doubtful cases should be resolved in favor of compensation, and the humane purposes which the Act seeks to serve leave no room for narrow technical construction. *Kiger v. Idaho Corp.,* 85 Idaho 424, 380 P.2d 208 (1963). In denying compensation for personality disorders on the grounds that they are are not physical in nature, the Court has, in my view, fallen into precisely the type of narrow technical construction we have always sought to avoid. As Professor Larson points out in this regard, there can no longer be any excuse for "[t]his sort of compartmentalizing of the 'physical' and the 'neurotic,' as if the nerves and brain were less a part of the body than the bones and tissues...." [2] 1B Larson's Workmen's Compensation Law, § 42.22 (1982). I agree and would accordingly affirm the judgment and award of the Industrial Commission.

---

**2.** Professor Larson then goes on to state the following:

"[T]here is no really valid distinction between physical and 'nervous' injury. Certainly modern medical opinion would support this view, and insist that it is no longer realistic *to* draw a line between what is 'nervous' and what is 'physical.' It is an old story, in the history of·the law, to observe legal theory constantly adapting itself to accommodate

new advances and knowledge in medical theory. Perhaps, in earlier years, when much less was known about mental and nervous injuries and their relation to 'physical' symptoms and behavior, there was an excuse, on grounds of evidentiary difficulties, for ruling out recoveries based on such injuries, both in tort and in workmen's compensation. But the excuse no longer exists." 1B Larson's Workmen's Compensation Law, § 42.23(a) (1982).