748 P.2d 1372

Helen **MAPUSAGA**,
Claimant–Respondent,

v.

**RED LION RIVERSIDE INN, Employer,
and Employers Insurance of Wausau,
Surety, Defendants–Respondents,**

and

**State of Idaho, Industrial Special In-
demnity Fund, Defendant–Appellant.**

**No. 16411.**

Supreme Court of Idaho.

June 11, 1987.

Rehearing Denied Sept. 30, 1987.

William L. Mauk, of Skinner, Fawcett & Mauk, Boise, for defendant-appellant.

L.M. Luker, of Goicoechea Law Office, Boise, for claimant-respondent, Mapusaga.

Gardner W. Skinner and Robert D. Lewis (argued), of Cantrill, Skinner, Sullivan & King, Boise, for defendants-respondents, Red Lion Riverside Inn.

DONALDSON, Justice.

This is an appeal from a decision of the Industrial Commission involving a claim for Worker's Compensation benefits wherein the commission found the claimant, Helen Mapusaga, totally and permanently dis-

abled under the odd-lot doctrine.[1] In so doing it apportioned the benefits paid to the claimant between the employer/surety and the Industrial Special Indemnity Fund (ISIF) in the ratio of 29% to 71%. The ISIF has appealed that decision raising a number of issues which are discussed below. We affirm in part, reverse in part, and remand.

The factual and procedural history of this case is complex. We will address only those facts relevant to this decision. Mapusaga worked as a maid at the Red Lion Inn in Boise. The primary injury giving rise to the worker's compensation claim occurred when Mapusaga pulled a bedspread onto a bed and immediately suffered an onset of backpain in her lower back.

At the time of her injury, claimant was seeing Dr. Lamarr Heyrend for psychiatric problems and had previously been a patient of Dr. Eric Holt, another psychiatrist, for four to five years. Apparently, the claimant's psychiatric disorder was rooted in her childhood when she suffered numerous physical and mental abuses inflicted by both her parents. The psychiatric problems have remained with claimant throughout her adult life. It has caused directly or indirectly extensive alcohol and drug abuse, and numerous suicide attempts. Claimant has been hospitalized in the mental ward of St. Alphonsus Hospital in Boise, Idaho, on numerous occasions, and has been an involuntary patient at the Idaho State Hospital in Blackfoot.

One of claimant's suicide attempts is relevant here. In 1980, after an argument with one of her sons, she shot herself with a rifle. As a result of this injury, the claimant suffered restricted use of her left arm, and hand and finger dexterity were substantially reduced.

Claimant's employment history has been sporadic. Since the early 1970's, she has held a number of jobs, all for short periods of time. Her most stable employment was as a maid, but she also had managed apartments, worked with a janitorial business and with a linen supply company. All of her employments were interrupted by periods of drinking, mental disorders, and other psychiatric problems.

As a result of the back injury, the claimant filed an application for a hearing with the Industrial Commission. The case was heard before a referee, where the claimant offered testimony. Subsequently, additional testimony in the form of depositions was submitted by several doctors and a vocational rehabilitation specialist. The commission issued an order containing findings of fact and conclusions of law. In this order the commission found that claimant was not capable of employment in any well-known branch of the labor market as the result of the back injury and the psychiatric disorder. The commission determined that the claimant suffered a 5% of the whole man impairment caused by the back injury, and in addition a 10% of the whole man disability caused by nonmedical factors such as age, education, and transferable job skills. Thus, ruling that the claimant was totally and permanently disabled, the commission held the employer/surety responsible for permanent/partial disability of fifteen percent of the whole person based on claimant's back injury and on the nonmedical factors. However, the commission relying on the doctrine announced by this Court in *Hartley v. Miller-Stephan*, 107 Idaho 688, 692 P.2d 332 (1984), ruled that the claimant could not recover for the pre-existing psychiatric injury because she lacked physical manifestations of the disorder. Thus, the ISIF was not held accountable for any portion of claimant's disability.

The claimant filed a motion for reconsideration challenging many of the findings of fact. The commission never ruled on the

---

1. An odd-lot worker is an employee who is so injured that he can "perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist." *Reifsteck v. Lantern Motel & Cafe*, 101 Idaho 699, 700, 619 P.2d 1152, 1153 (1980).

motion for reconsideration, but instead, the referee contacted the attorneys for all parties, requesting their stipulation to the selection of a physician who could examine and evaluate claimant's left arm. Despite the ISIF's objection, the commission's referee selected Dr. Robert C. Burton, a Boise neurologist. Dr. Burton examined the claimant and reported that claimant suffers from a 12% whole person impairment due to the arm injury. This report became part of the evidentiary record.

With the additional impairment rating of Dr. Burton, the commission issued a new opinion. In this opinion, the ultimate outcome changed substantially. First, the commission found that claimant's self-inflicted injury to her arm and the impairment rating thereon constitutes a pre-existing physical impairment for the purpose of the ISIF's threshold liability, I.C. § 72–332(1). Further, the commission found that claimant's substantial personality disorder, although not a permanent physical impairment under I.C. § 72–332, is a personal circumstance under I.C. § 72–430, and, therefore, capable of being compensated for. The commission found that the substantial personality disorder and other non-medical factors result in a personal circumstance disability rating of about 80% of the whole man. When combined with the back injury (5% permanent physical impairment) and the arm injury (12% permanent physical impairment), the claimant is totally and permanently disabled. Applying the rule of *Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 686 P.2d 54 (1986), the commission apportioned responsibility for the personal circumstances between the employer/surety and the ISIF, ruling the employer/surety responsible for 29% of the claimant's total disability, and ISIF responsible for the remaining 71%.

The ISIF filed a motion for reconsideration and rehearing challenging the new substituted opinion and order. Specifically, the ISIF challenged the commission's action in reopening the record and taking evidentiary testimony of a doctor not subject to cross-examination by the ISIF and in not allowing the ISIF to submit additional evidence regarding Dr. Burton's testimony. The commission denied the motion. The ISIF has appealed raising five issues: (1) whether the commission erred in refusing to consider evidence that claimant was capable of engaging in some limited employment; (2) whether a self-inflicted injury is a permanent physical impairment within the "subjective hindrance" standard of I.C. § 72–332(2); (3) whether the ISIF is entitled to the benefit of the defense contained in I.C. § 72–208(1) for injuries which were self-inflicted; (4) whether the claimant's personality disorder is a "personal circumstance" and thus subject to apportionment between the employer/surety and the ISIF when calculating disability payments; and (5) whether the commission erred by reopening the record in order to allow the introduction of evidence relating to the physical impairment of claimant's arm which was not part of the original hearing record.

I

We turn initially to the commission's finding that claimant is totally and permanently disabled. The prerequisite to ISIF liability is a finding of total and permanent disability. I.C. § 72–332(1). *Sines v. Appel*, 103 Idaho 9, 644 P.2d 331 (1982). Our scope of review is well settled. In reviewing factual findings of the commission, we must affirm if they are supported by substantial and competent evidence. Id. Const., art. 5, § 9. *Neufeld v. Browning Ferris Industries*, 109 Idaho 899, 712 P.2d 600 (1985). The commission had before it evidence of claimant's age, skills, work history, psychiatric history, her own testimony, the testimony of several doctors and a vocational rehabilitation specialist.

The claimant has the burden of establishing a prima facie case of total disability within the odd-lot category. *Gordon v. West*, 103 Idaho 100, 645 P.2d 334

(1983). Here, the record indicates that claimant has tried to return to maid work, but the back pain has prevented her from doing so. Further, she has attempted to do janitorial work, but has been able to perform only the most rudimentary task, and then only for short and irregular periods. "It is not necessary for a person to be physically unable to do anything worthy of compensation to be classified as totally disabled." *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 406, 565 P.2d 1360, 1362 (1977). We conclude that claimant has satisfied her burden of proof and shown that she is totally and permanently disabled within the odd-lot category. She has attempted to return to work, but because of her various injuries has not been able to do so. The type of work she has been able to perform has been limited in nature. Further, various doctors have testified that she is unable to work. There is substantial and competent evidence to support the finding of the Industrial Commission that she is totally and permanently disabled.

■ Once the claimant meets her initial burden, the burden then shifts to the ISIF to show that some kind of suitable work is readily and continuously available to the claimant. *Reifsteck v. Lantern Motel & Cafe*, 101 Idaho 699, 619 P.2d 1152 (1980). The ISIF argues that there is sufficient evidence to indicate that after the injury, claimant has worked for several employers doing baby-sitting and elderly care-taking. The claimant has testified that she had no difficulty doing this work. Thus, the ISIF argues that there is suitable work available for the claimant which disputes the finding of total disability.

However, claimant has provided evidence from expert medical testimony indicating that she should avoid stress and not work alone. Also there is evidence that baby-sitting and elderly care-taking jobs are very sporadic. Finally, two psychiatrists and a rehabilitation expert testified that these occupations were inappropriate for the claimant, and, in fact, dangerous to those whom she cares for. Thus, we conclude that the ISIF has not shown that there is suitable work for the client. Therefore, we agree with the findings of the Industrial Commission that claimant is totally and permanently disabled within the odd-lot category.

II

We now turn the second issue raised by the ISIF. The commission ruled that the claimant's arm injury was a permanent physical impairment within the meaning of I.C. § 72–332, thus giving rise to ISIF liability. The ISIF argues that the commission did not properly apply the requirements of I.C. § 72–332(2) in making this determination. Specifically, the ISIF contends that the commission incorrectly interpreted the "subjective hindrance" portion of the statute. I.C. § 72–332(2) states:

"**72–332. Payment for second injuries from industrial special indemnity account.—**

" . . .

"(2) 'Permanent physical impairment' is as defined in section 72–422, Idaho Code, provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment."

■ Thus, the ISIF is liable when a pre-existing permanent physical impairment combines with a work-related injury to make an employee permanently and totally disabled. We must address whether, in the context of this case, the claimant's

arm injury is a permanent physical impairment. A permanent physical impairment is any condition which could reasonably hinder or obstruct the future obtainment of employment. *Gugelman v. Pressure Treated Timber Co.*, 102 Idaho 356, 630 P.2d 148 (1981). However, this is to be interpreted subjectively, *i.e.*, whether the employee considers the condition a hindrance. Further, the fact that the claimant is employed shall not create a presumption that the pre-existing injury is not a hindrance or obstacle.

The present language of the statute was amended in 1981 to include the "subjective hindrance" test. Prior to 1981, this Court had articulated an "objective" test to be used when determining whether a claimant had a pre-existing permanent physical impairment. The objective test focused on whether a reasonable employer would consider the impairment on an *ordinary* claimant (not the actual claimant) a hindrance or obstacle. This Court expressed the test in *Curtis v. Shoshone County Sheriffs Office*, 102 Idaho 300, 629 P.2d 696 (1981):

> " 'Permanent physical impairment' is any permanent condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemployment. A hindrance or obstacle to obtaining employment or reemployment would exist if the preexisting permanent condition would reasonably cause a potential employer to be reluctant to hire a person because of concern such as the person's preexisting condition made him a less capable worker, a greater risk in terms of getting injured, or a greater risk in terms of the amount of potential permanent disability that the worker would suffer from an injury. Actual hindrance to one's attempts at obtaining employment is not required." *Id.* at 305, 629 P.2d at 701.

However, the legislature has changed the emphasis from any claimant to the specific claimant involved. Under the objective test, a particular claimant who is not hindered by an impairment could still qualify for permanent disability as long as the same impairment on a hypothetical claimant could be considered a hindrance. The purpose of the amendment is to eliminate those claimants who have had an earlier injury, but have not suffered any loss of *potential* earning capacity. Now, the nature of the inquiry shifts from a hypothetical claimant to the actual claimant involved.

The policy behind the creation of the Special Indemnity Fund must be considered when interpreting I.C. § 72–332(2). The Fund was created for the purpose of encouraging employers to hire handicapped persons, "with the obligation only to pay compensation for an industrial injury to the handicapped person such amount as the employer would have had to pay an employee who had not been handicapped with the Indemnity Fund assuming responsibility for the balance of the total permanent disability." *Royce v. Southwest Pipe of Idaho*, 103 Idaho 290, 294, 647 P.2d 746, 750 (1982). Thus, a reasonable employer will hire an impaired person without concern "of paying total permanent disability compensation when only part of the disability is due to the industrial accident." *Gugelman v. Pressure Treated Timber Co.*, *supra*, 102 Idaho at 360, 630 P.2d at 152. Consistent with this purpose, the test must focus on whether the reasonable employer would consider the potential employee handicapped, and, if so, whether the existence of the Special Indemnity Fund would encourage the employer to hire the potential handicapped employee.

Thus, we conclude that a proper analysis of I.C. § 72–332(2) requires a two-step process: (1) whether the injured claimant considers the pre-existing impairment an obstacle or hindrance to further employment, and, if so, (2) whether a reasonable employer under the circumstances would consider the claimant's impairment to be of such a nature that any subsequent injury combined with the impairment would more likely make the claimant totally and permanently disabled. The potential employer

would have to give consideration to the claimant's other factors, relating to employability, *i.e.*, age, training, skills, etc. If both requirements are met, a claimant will be considered to have a "permanent physical impairment" within the meaning of I.C. § 72–332(2). Applying this test to the pertinent facts at hand, we note claimant's testimony indicates that as a result of the arm injury, she had lost strength in her left arm and suffered numbness which resulted in a loss of control. She further testified that she had lost dexterity in her middle finger and occasionally had sharp pain running up and down her arm. As a result of these problems, she testified to a limited use of her left hand when performing manual activities. We conclude this is sufficient evidence to sustain the finding that the claimant considered her impairment to be an obstacle and a hindrance to further employment.

█ The only evidence offered on the *second part of the test* is the testimony of Polly Peterson, a vocational rehabilitation specialist.[2] She testified that the condition of claimant's arm could reasonably cause a potential employer to be reluctant to hire the claimant because of concerns that the condition in her arm would make her a less capable worker, and more likely to be injured again. We conclude that there is sufficient evidence to support the finding by the Industrial Commission that the claimant's arm injury was a pre-existing permanent physical impairment within the meaning of I.C. § 72–332(2).

### III

█ The ISIF argues that it was error for the commission to deny it the benefit of I.C. § 72–208(1), which precludes benefits to a claimant who is impaired due to wilful self-inflicted injuries. I.C. § 72–208(1) states:

"**72–208. Injuries not covered—Wilful intention—Intoxication.**—(1) No

compensation shall be allowed by the employee's wilful intention to injure himself or to injure another...."

The ISIF argues that since the claimant, Helen Mapusaga, injured her arm while attempting suicide, I.C. § 72–208 precludes compensation for this injury. Thus, the issue before us is whether Special Indemnity Fund is entitled to the defense contained in this section—the employee's nonrecovery *for* wilful injury. This issue is one of first impression in Idaho.

To properly determine if this defense is available to the ISIF requires a reconciliation of I.C. § 72–332(2) and I.C. § 72–208(1). I.C. § 72–332(2) authorizes a liability against the ISIF where there is a permanent physical impairment from any cause or origin. The ISIF argues that the legislature did not intend to include within this broad language pre-existing injuries which are self-inflicted as defined in I.C. § 72–208. Both statutory provisions were enacted in 1971. *See* 1971 Sess.Laws ch. 124, § 3, p. 422. The ISIF contends that in enacting these two provisions, the legislature made the ISIF a reinsurer in total disability cases, but failed to make any exceptions for the defense expressly created in I.C. § 72–208(1). Thus, contends the ISIF, the legislature must have intended to give it the same benefit of the defense of self-injury as provided to the employer. We disagree.

The language of I.C. § 72–332(2) is quite clear. The statute states that the ISIF is liable in case of injuries where there is a permanent physical impairment *"from any cause or origin."* Words of a statute must be given their plain, usual and ordinary meaning. *State v. Ankney,* 109 Idaho 1, 704 P.2d 333 (1985). The plain, usual and ordinary meaning of "from any cause or origin" would include wilful injuries. I.C. § 72–208(1) precludes recovery for wilful actions of the employee. Whether injuries

---

**2.** The ISIF objected to Ms. Peterson's testimony arguing that she is unqualified. We disagree. At this time, it is sufficient to say Ms. Peterson has a M.S. in rehabilitative counseling, is a

nationally certified rehabilitative counselor and spent over ten years working with handicapped people performing employment evaluations and helping them with placement.

which involve the ISIF are included within its scope is not facially clear. When the policy behind the creation of the ISIF—to allow employers to hire handicapped employees without fear of being forced to pay compensation for injuries previously suffered—is considered, we deem it clear that I.C. § 72–208(1) excludes the ISIF from its scope. This situation is analogous to nonwork related accidents. The employer is not responsible for injuries caused by nonwork related accidents. I.C. § 72–102(14)(a), (b). However, an employee with a pre-existing permanent physicial impairment, regardless of whether this injury came about as a result of a work-related accident or nonwork related accident, is entitled to recover from the ISIF. With respect to the second injury fund, we perceive no valid distinction between wilful injuries and nonwork related. Thus, we conclude that the ISIF is not entitled to the defense contained in I.C. § 72–208(1), and that the clear, unambiguous meaning of I.C. § 72–332(1) will be given effect.

### IV

■ The ISIF also argues that the commission erred by classifying the claimant's mental disorder as a personal circumstance, and consequently erred by applying the *Carey* apportionment formula in awarding benefits. *See Carey v. Clearwater County Road Department*, 107 Idaho 109, 686 P.2d 54 (1984). The *Carey* formula is used in cases where the claimant is totally disabled within the odd-lot category and requires apportionment of nonmedical factors between the employer/surety and Special Indemnity Fund in proportion to their respective percentages of responsibility for the physical injuries. *Id.* at 118, 686 P.2d at 63. The ISIF contends that by classifying the mental disorder as a personal circumstance, the commission circumvented our holding in *Hartley v. Miller-Stephan*, 107 Idaho 688, 692 P.2d 332 (1984). In *Hartley* we held that a personality disorder lacking any physical symptoms whatsoever does not qualify as a pre-exist-

ing physical impairment within the meaning of I.C. § 72–332(2).

Initially, we must examine under what situations, if any, a mental disorder may be treated as a personal circumstance and prorated between the employer and the ISIF. In making a finding of permanent disability, the commission must consider both the medical factor of permanent impairment and other pertinent nonmedical factors. I.C. § 72–425. We have enumerated some of these nonmedical factors to include age, sex, education, economic and social environment, training and usable skills. *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 406, 565 P.2d 1360, 1363 (1977). Here, the claimant suffers from a psychiatric disorder. This mental disorder apparently was caused by events surrounding the claimant's traumatic and turbulent childhood and later life. Her condition is further aggravated when she is exposed to stress. There is no single incident or event which can be identified as the cause of the personality disorder. Thus, her mental disorder can be treated as a nonmedical factor. However, our ruling in *Hartley, supra*, may appear at first blush to foreclose an award of disability benefits for mental disorders unless the claimant develops physical manifestations. To reconcile these apparent differences we must examine previous cases involving mental disorders.

In *Paulson v. Idaho Forest Industries Inc.*, 99 Idaho 896, 591 P.2d 143 (1979) the claimant suffered lower back injuries while doing physical labor. Despite corrective surgery, the claimant continued to have difficulties with his back. Relying on a psychiatric evaluation, the Industrial Commission found that Paulson suffered from a hysterical neurosis of the conversion type caused by the injuries he sustained while working at Idaho Forest Industries. The commission ordered the employer to provide reasonable medical benefits for the mental disorder. The Supreme Court affirmed the finding of the Industrial Commission and ruled that the commission's

order was supported by substantial and competent evidence.

In *Bartel v. J.R. Simplot Co.*, 106 Idaho 174, 677 P.2d 487 (1984), the claimant, Bartel, suffered an injury which resulted in pain to her shoulder and numbness in her arm. She was diagnosed as suffering carpal tunnel syndrome. However, surgery failed to alleviate Bartell's persistent pain. A panel of doctors all agreed that her persistent pain and numbness were due to "conversion reaction hysteria." This type of hysteria occurs where a claimant suffers an actual physical disability which is treated and repaired, but the symptoms continue in the mind of the claimant because she is deriving some secondary gain from the disability. In *Bartel* a psychiatrist testified that the secondary gain was probably that the claimant did not want to work, but preferred to stay at home with her family. The commission found that the claimant had a permanent physical impairment of 8% of the whole person with respect to the carpal tunnel syndrome. Also, the commission found that claimant suffered from a conversion reaction and concluded that she should receive an additional 7% of the whole person rating. However, the commission found that the conversion reaction was relatively mild, and that the claimant could perform duties consistent with her previous employment. On appeal this Court upheld the findings of the Industrial Commission. We relied on the general rule that findings of the Industrial Commission will not be disturbed when they are supported by competent evidence.

In *Hartley, supra,* the claimant suffered a knee injury while at work. The commission determined that the claimant suffered from a long term avoidant personality disorder, which the commission found to constitute a pre-existing permanent physical impairment of 10% of the whole man. Thus, the Special Indemnity Fund was implicated for liability. On appeal, we reversed. We first recognized that psychological disorders should be compensated if they are proximately caused by the job environment and if they result in a loss of earning capacity. However, we examined the plain and obvious language of I.C. § 72-332 which specifically limited recovery for second injuries to impairments which are permanent and *physical*. Thus, we held that the Special Indemnity Fund will not be liable for psychological disorders, unless there is a physical aspect of the injury.

In sum, *Paulson, supra,* and *Bartel, supra,* allow an employee recover for psychological injuries. In both cases employees had physical symptoms as well as mental symptoms. However, we did not limit our holding in either case to say that an employee must have physical symptoms before he or she can recover. In *Hartley, supra,* we held that the legislature specifically intended not to treat personality disorders lacking any physical manifestations as a pre-existing impairment for purposes of imposing liability on the Special Indemnity Fund. The question now before us is whether a personality disorder lacking physical manifestations can be treated as a nonmedical factor under I.C. § 72-425. *Hartley* does not prohibit an affirmative answer to this inquiry. We conclude that the Industrial Commission was correct in including the psychological disorder as a personal circumstance and allocating responsibility between the Special Indemnity Fund and the employer/surety.

### V

The ISIF argues that the commission erred when it reopened the record in order to allow an introduction of an impairment rating on the claimant's left arm without holding a new evidentiary hearing. After its first initial opinion the claimant moved for reconsideration. Neither in the motion nor in the supporting memorandum did the claimant request that the record be opened for the purpose of obtaining a rating on the claimant's left hand and arm. However, the commission, instead of issuing an order granting reconsideration, contacted all counsel asking each to submit the

name of a physician to evaluate the claimant's left arm.[3] After names were submitted, Dr. Robert Burton was selected to evaluate the claimant and to provide that rating. Dr. Burton examined the claimant and provided a report which assigned an impairment rating of 12% of the whole man relating to the arm injury. The commission adopted this rating in its final opinion. At no time was the ISIF allowed to challenge this finding either through cross-examination or through an opportunity to introduce any conflicting evidence of the new impairment rating. The ISIF argues the commission erred in this respect. We agree.

First we note, that I.C. § 72–708 provides that procedure under worker's compensation laws will be summary and as simple as reasonably possible. *Hattenburg v. Blanks*, 98 Idaho 485, 567 P.2d 829 (1977). The commission is an administrative and fact finding body and can produce its own evidence upon any material question. *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 74 P.2d 171 (1937).

The commission has the power to investigate and examine witnesses. *Shell v. Standard Oil Company of California*, 93 Idaho 370, 461 P.2d 265 (1969). Thus, the commission acted properly when, on its own accord, it re-opened the record for the purpose of taking evidence of the claimant's impairment on her arm. However, once the commission does place new evidence into the record, all parties should have a right to dispute that evidence by challenging its validity or by introducing additional or conflicting evidence. *Patrick v. Smith Baking Company*, 64 Idaho 190, 129 P.2d 651 (1942). Thus, we conclude it was error for the commission to not allow the ISIF to dispute Dr. Burton's rating of 12% impairment in respect to the claimant's arm. Therefore, we reverse and remand to the Industrial Commission for purposes of allowing all parties to submit evidence regarding the impairment rating on claimant's arm.

The Industrial Commission's decision is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.

Each party is to bear its own costs and attorney fees.

BAKES, BISTLINE and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

Justice Donaldson's opinion upholding the Commission should be well received. The Commission is also to be commended.

For myself, however, Part IV would have simply overruled *Hartley v. Miller-Stephan*, 107 Idaho 688, 692 P.2d 332 (1984), for reasons I heretofore stated in 107 Idaho at 691, 692 P.2d at 335. I remain amazed that three of my esteemed colleagues were persuaded to Justice Shepard's view that the brain was not part of the anatomy of a human being, and that its functional loss or abnormality was not within the purview of the plain language of I.C. § 72–422 which defined permanent impairment. "Personality disorders," "mental disorders," and "psychiatric disorders" are as much attributable to an anatomical or functional abnormality or loss as they are to personal circumstances—perhaps more so.

SHEPARD, Chief Justice, dissenting.

I must dissent from Part IV of the majority opinion. I believe the case of *Hartley v. Miller-Stephan*, 107 Idaho 688, 692 P.2d 332 (1984) is controlling.

In *Hartley*, we also were concerned with the construction of I.C. §§ 72–332 and –422. The language "permanent *physical* impairment" used in I.C. § 72–332(2), is the key, and although the definition of "permanent impairment" in I.C. § 72–422 incorporated by reference in I.C. § 72–332, does not use the word "physical," the legislature intended the plain meaning of that word as used in I.C. § 72–332(2) to be controlling.

**3.** The ISIF objected to this procedure, but agreed to submit the name of a physician.

852

The Industrial Commission in *Hartley* found that the claimant was totally and permanently disabled due to the combined effects of a knee injury, a preexisting knee injury and a preexisting personality disorder. The claimant's mental disorder was termed an avoidance personality disorder, the symptoms of which include "hypersensitivity to potential rejection, unwillingness to enter relationships, depression, humiliation, anxiety, anger and an impaired ability to function socially." *Hartley, supra,* 107 Idaho at 689, 692 P.2d at 333. Because of the preexisting conditions, the Commission, as here, apportioned liability for the total permanent disability between the employer/surety and the ISIF pursuant to I.C. § 72–332. The ISIF appealed, contending that the Commission erred in that the claimant's personality disorder did not constitute a permanent physical impairment within the meaning of I.C. § 72–332. This Court reversed and remanded the case to the Commission, stating:

> [T]he definition of preexisting permanent physical impairment, as stated in I.C. § 72–422 and incorporated by reference into I.C. § 72–332, does not expressly limit that term to physical, i.e., anatomical, impairments. Nonetheless, the fund argues that the word "physical" would not appear in the phrase "permanent physical impairment" within I.C. § 72–332, had not the legislature intended some significance thereby. We agree. This Court will assume that the legislature intended what it said in a statute, and we will construe statutory terms according to their plain, obvious, and rational meanings. (Citations omitted.) We will not construe a statute in a way which makes mere surplusage of the provisions included therein. (Citations omitted.) Therefore, we discern that the legislature intended the usual, common meaning of the word "physical" when it used that word in I.C. § 72–332. This interpretation of the preexisting physical impairment language in that statute is consistent with our requirement in other cases that the preexisting physical impairment be manifest. (Citations omitted.) 107 Idaho at 690, 692 P.2d at 334.

The reasoning in *Hartley* is equally applicable here. Claimant Mapusaga reasons that her mental disorder is a preexisting condition contributing to her total and permanent disability, but because she exhibits no physical manifestations of her disorder, such disorder is not compensable under I.C. § 72–332.

The majority opinion asserts that *Paulson v. Idaho Forest Industries Inc.,* 99 Idaho 896, 591 P.2d 143 (1979) and *Bartel v. J.R. Simplot Co.,* 106 Idaho 174, 677 P.2d 487 (1984), support the majority's conclusion that claimant's psychological disorder should be included as a non-medical factor in determining disability. I disagree. The majority has failed to recognize that in both *Paulson* and *Bartel,* the mental disorders were the result of the industrial injury which the claimant in each case had suffered. The instant case is of course different in nature in that Mapusaga's mental condition predated the injury to her back while employed at Red Lion. Thus, the instant case is indistinguishable from *Hartley,* wherein the claimant's mental condition also predated the industrial injury to his knee.

I would reverse the decision of the Industrial Commission as to that portion discussed and affirmed in Part IV of the majority decision.