CHARLES RUFFIN, RELATOR, v. STATE TREASURER WILLIAM H. ALBRIGHT AND JOHN J. TOOHEY, Jr., COMMISSIONER OF LABOR, RESPONDENTS.

Submitted October 4, 1938—Decided December 22, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the relator, *Emil Neblo*.

For the respondents, *William J. Egan* and *Stephen J. Lorenz*.

BODINE, J. Relator seeks to quash the return to an alternative writ of *mandamus* and to have granted to him a peremptory writ of *mandamus* directing payment to him of benefits from the one per cent. fund.

The statute is as follows (*R. S.* 34:15-95) : "The sums collected under section 34:15-94 the terms of this title shall constitute a fund out of which a sum shall be set aside each year by the Commissioner of Labor from which compensation payments in accordance with the provisions of paragraph 11b of section 34:15-12 of this title shall be made to persons totally disabled, as a result of experiencing a permanent injury under conditions entitling such persons to compensation therefor, when such persons had previously been permanently and partially disabled from some other cause. In such cases the compensation payable from such fund shall cover that portion of the period for which the employer is not legally responsible due to the permanent and partial disability suffered or possessed by the employe at the time that the employe sustained the injury as a result of which the employe became totally and permanently disabled. Payments to such totally disabled employes shall be made from said fund by the state treasurer upon warrants of the Commissioner of Labor. This section shall be applicable to any accident occurring since July fourth, 1919, in so far as paying of compensation for total disabilities of this class is concerned."

The Court of Errors and Appeals in an opinion written by Mr. Justice Perskie in *Richardson* v. *Essex National Trunk Co.,* 119 *N. J. L.* 47 (at *p.* 52), said: "It is only natural, in the practical administration of such a complex and relatively new state governmental function as the rehabilitation of injured persons that unforeseen contingencies should arise from time to time. But we clearly discern in the act of 1926 a continued and progressive development of the law to meet unforeseen contingencies as they arise to the end that full force and effect be given to the objective sought to be accomplished by the state, namely, to make its plan of rehabilitating injured persons workable and a useful reality. That goal can only be accomplished if all affected act in

co-operation. The state has done, and is doing, its part; the employe—the direct beneficiary—undoubtedly welcomes the opportunity of engaging in honorable and gainful occupation; but how was the employer to be induced to co-operate? Certainly he could not be induced to co-operate upon a premise that would impose a liability upon him such as was imposed upon the employer in the Obser case, 95 *N. J. L.* 43. Thus the legislature set out to, and did, eliminate the employer's liability for an accident unrelated to the employment of the injured person. We discern in its legislation of 1936, a clear intent not to impose any greater obligation upon an employer who hires or employs a person previously injured than if he had hired a person not so injured."

The commissioner in the instant case refused payment from the fund for the following reason appearing in the return: "5. It is true that said deputy commissioner of labor conducting the hearing on relator's application for payment from the one per cent. fund made a finding and determination that the relator was at the time of said hearing before him, totally and permanently disabled but that the relator did not come within the provisions of the so-called One Per Cent. Fund statute because he had failed to present sufficient evidence from which the deputy commissioner could reach a finding, that at the time of the accident relator was totally disabled as a result of the accident and from other cause, and concluded that relator did not come within the provisions of the one per cent. fund."

The relator was injured September 10th, 1932. The bureau awarded him compensation on April 9th, 1934. He subsequently, and on October 4th, 1937, filed a claim for benefits under the one per cent. fund. It is conceded that at the time of the hearing he was totally and permanently disabled. If this condition had existed when the award was made in 1934, and he had then sought payment the award now contested would have been granted.

The purpose of the legislature in enacting the provision for the one per cent. fund is made clear in Mr. Justice Perskie's opinion in *Richardson, supra*—it was to help

rehabilitate injured employes by work. There is in the statute no words of express limitation as to the time for application for benefits. We think, however, it must be at the time application could be made for compensation for the last accident sustained, or for increased disability therefrom. Payments to the fund are directed to be made by companies writing compensation insurance until the fund reaches $200,000 by reason of payments and additions of interest therefrom. When this sum is reached, payments cease until the fund drops below the $200,000 figure, when they must again be made. It is our thought that if, at any time, an employe who had been paid full compensation provided by the act for total disability can seek further payments from the fund without limit except his own lifetime the fund would be insufficient for any such purpose. Many who have received the compensation must become totally disabled at some time. The one per cent. fund had a definite purpose, to help in the rehabilitation and re-employment of a partially injured workman. It was not an insurance scheme or an old age pension fund. The rights to participation in its benefits, we think, must be subject to the same limitations contained in the act providing for the time in which compensation or increased compensation may be sought.

The relator is not entitled to a writ and the application is denied.