707 P.2d 384

**Wallace J. WALTMAN, Claimant-Respondent,**

v.

**ASSOCIATED FOOD STORES, INC., Employer, and Insurance Company of North America, Surety, Defendants-Respondents,**

and

**The State of Idaho, Industrial Special Indemnity Fund, Defendant-Appellant.**

**No. 15540.**

Supreme Court of Idaho.

June 4, 1985.

Max M. Sheils, Jr. (argued), Ellis, Brown, Sheils & Steele, Chartered, Boise, for defendant-appellant.

Lynn M. Luker (argued), Goicoechea Law Offices, Boise, for claimant-respondent Wallace J. Waltman.

R. Daniel Bowen (argued), Quane, Smith, Howard & Hull, Boise, for defendants-respondents Associated Food Stores, Inc. and Ins. Co. of North America.

BISTLINE, Judge.

While Mr. Waltman, claimant, was employed by Associated Food Stores, Inc., he injured his right knee stepping out of a truck. Following treatment of this injury, Mr. Waltman received an impairment rating of ten percent of the leg at the knee. Based on this rating, a compensation agreement was entered into between the claimant and his employer and its surety. On February 1, 1979, the agreement was approved by the Industrial Commission. At the signing of the agreement, Mr. Waltman understood he could reopen his case within five years from the date of the accident.

Prior to the expiration of the five-year period, Mr. Waltman contacted his doctor regarding his knee injury. The doctor advised the employer's surety that the case had been reopened. Ensuing negotiations

between the claimant and the employer's surety failed to result in an agreement which the Commission would approve. Mr. Waltman then requested a hearing, bringing in as a party-defendant the Industrial Special Indemnity Fund, and alleging that he was totally and permanently disabled.

The Industrial Commission considered the matter as two separate proceedings: (1) a proceeding by the claimant against the employer and surety for modification of the claimant's compensation agreement pursuant to I.C. § 72–719; and (2) a proceeding by claimant against the Industrial Special Indemnity Fund (ISIF) to secure additional compensation benefits under the provisions of I.C. § 72–332. At the hearing, testimony was received from claimant and his wife. Deposition testimony of three doctors was admitted. All three testified that Mr. Waltman was totally disabled. Two of the doctors testified that the 1976 industrial accident had aggravated Mr. Waltman's pre-existing rheumatoid arthritis. The Commission found that that accident caused a flare-up of his pre-existing condition of rheumatoid arthritis and that it was the aggravation of this condition which caused him to become totally and permanently disabled.[1] Contemporaneously, the Commission also found claimant's ten percent permanent physical impairment had not changed since the approval of the compensation agreement between claimant and the surety on February 1, 1979. Hence, claimant was not entitled to recover additional benefits from the employer-surety.

■ The Commission did conclude that claimant was not time-barred from pursuing his remedy against the ISIF under I.C. § 72–332[2] which provides that if the combined effects of a pre-existing impairment and a subsequent injury, or the aggravation and acceleration of a pre-existing impairment by a subsequent injury cause an employee to be totally and permanently disabled, the employer and surety are liable only for payment of compensation benefits caused by the injury, and the employee shall be compensated for the remainder of his total permanent compensation benefits by the Industrial Special Indemnity Fund. Hence, when one's employment aggravates, accelerates or "lights up" a pre-existing disease so that total permanent disability results, the employee is entitled to one hundred percent disability benefits. *Bowman v. Twin Falls Const. Co., Inc.*, 99 Idaho 312, 581 P.2d 770 (1978).

The Commission concluded the claimant was totally and permanently disabled as of April 3, 1981, and was entitled to permanent total disability income benefits from the ISIF commencing on that date. The ISIF's obligation to Mr. Waltman was reduced by the permanent impairment and disability caused by the accidental injury.

■ The ISIF argued to the Commission on Motion for Reconsideration, and on appeal to this Court, that any claim against it was barred because Mr. Waltman did not file a claim or application for hearing against the ISIF within five years of his accident. Further, the ISIF argued that the statute of limitations provisions of I.C. § 72–706 should apply to the ISIF precluding Mr. Waltman from obtaining any income benefits from the ISIF. The Commission in denying the Motion before it stated:

> Counsel for the Fund also argue that in order for the Fund to have liability, there must be a viable claim against the

---

1. The Commission adopted the findings and conclusions of the referee who conducted the hearing, therefore, we speak in terms of the Commission's decision.

2. **72–332. Payment for second injuries from industrial special indemnity account.**—(1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the industrial special indemnity account.

Employer. In the present case there was a viable claim against the Employer, and the Claimant received both medical and income benefits from the Employer in connection with the injury to his knee. The Commission's decision of January 24 did not hold that the Claimant's claim against the Employer and Surety was barred, but simply held that the Claimant had not established entitlement to additional benefits from the Employer and Surety.

We agree. Moreover, the Commission concluded that it was cloaked with jurisdiction where the claimant reopened his claim within the five year time limitations set forth in I.C. § 72–706. No challenge has been made to that conclusion. Because the Commission had continuing jurisdiction where the subsequent application requesting total permanent disability was made within the statutory time limits, we find the ISIF's arguments without merit, *as applied to this case.* Had the claimant failed to reopen his case within the allowable time limitations, then the arguments of the ISIF might be proper.[3]

Similarly, where an injured claimant in the first instance fails to meet the time requirements of I.C. § 72–701, and his claims against the employer-surety are barred, then the ISIF seemingly obtains the benefit of that preclusion.[4] However, that is not the case before us.

The decision of the Commission is affirmed. Costs to respondents.

DONALDSON, C.J., and HUNTLEY, J., concur.

3. At oral argument, counsel for the ISIF theorized that the ISIF might be pursued on a claim for total and permanent liability 20 or 25 years after the accidental injury, thus casting a tremendous difficulty on the ISIF in defending. The assertion was that the lapse of many years would present obstacles in the way of demonstrating that the then current condition was the result of the original injury rather than a pre-existing condition. Hence, so it is contended, a statute of limitations is needed to protect the ISIF from burden of proof and causation problems. However, such a case is not presently before us, and we decline the invitation to manufacture any statute of limitations other than those now in existence, of which it seems that

BAKES, Judge, dissenting:

The facts of this case need to be clarified. Claimant had a pre-existing impairment consisting of rheumatoid arthritis. On June 8, 1976, he incurred a knee injury in the course of his employment causing a 10% impairment for which the surety paid medical expenses and permanent partial disability payments. The surety represented to claimant at the time of the compensation agreement that he could "reopen" the settlement at any time within five years of the accident by having the doctor notify the surety. Within five years of the accident the doctor did notify the surety, which began negotiating with claimant. More than six years after the date of the accident, claimant, on June 29, 1982, filed a request with the commission to review the agreement and then for the first time asserted a claim for permanent total disability against the I.S.I.F.

The I.S.I.F. had no notice of any claim prior to this time, nor notice of the negotiations between the claimant and the surety. Both the surety and I.S.I.F. contested the factual allegations and defended on the grounds that the claim violated the statute of limitations. The commission determined that there was no change in the 10% impairment resulting from the knee injury, so that no grounds existed to review the previous agreement and therefore the commission did not reach the legal question of whether the application to review the surety's settlement agreement was barred by the statute of limitations. As against I.S.

the ISIF now has a secondary or derivative benefit—which may, over the years, afford sufficient protection.

4. Not before us is the case where the claimant failed to reopen his claim under I.C. §§ 72–706 or 72–719 within the required time limits. Although the merits of a case of this nature were argued by counsel on appeal, we decline to address this issue until we are directly presented with the case. ISIF, after being brought in as a party-defendant, had the opportunity to join with the surety in resisting the re-opening of the case.

**276**

I.F., the commission made a factual determination that the knee injury had caused a "flare-up" of the pre-existing arthritis condition, resulting in claimant's condition degenerating to permanent total disability. The commission further made a legal conclusion that there are no time limits on a claim against the I.S.I.F. Therefore, the surety was not required to pay any further benefits, but I.S.I.F. was liable for permanent total disability benefits less the amounts previously paid by the surety.

The majority does not go as far as the commission's conclusion that no statute of limitations can bar a claim against I.S.I.F. Rather, the majority implies, *ante* at 386, that the case turns on whether the claimant had properly filed a request for hearing or review with the commission within the time limitations of I.C. §§ 72–706, –719.

> "Moreover, the commission concluded that it was cloaked with jurisdiction where the claimant reopened his claim within the five-year time limitations set forth in I.C. § 72–706. No challenge has been made to that conclusion. Because the commission had continuing jurisdiction where the subsequent application requesting total permanent disability was made within the statutory time limits, we find the I.S.I.F.'s argument without merit, *as applied to this case.* Had the claimant failed to reopen his case within the allowable time limits, then the arguments of the I.S.I.F. might be proper.
>
> . . . .
>
> . . . .
>
> [Footnote] 4. Not before us is the case where the claimant failed to reopen his claim under I.C. §§ 72–706 or 72–719 within the required time limits. . . . ."
> *Ante* at 385–386.

The "statutory time limit" in both 72–706 and –719 referred to by the majority is five years. In reviewing the referee's decision, adopted by the commission, and the commission's denial of reconsideration, I find no conclusion by the commission that claim-

ant had filed for hearing or review within the five-year limit. The decision specifically stated, "It is not necessary to decide whether the claimant's action against the Employer or Surety is barred by the statute of limitations." Claimant's position at the hearing was that the surety, through its representations to claimant, had waived its right to rely on the statute of limitations; and, that in no event was I.S.I.F. entitled to rely on the statute of limitations. In fact, it was uncontested at the hearing and again uncontested on appeal that the application was not filed until six years after the industrial accident. Therefore, contrary to the majority's footnote 4, we are squarely faced with the situation in which "claimant failed to reopen his claim under I.C. §§ 72–706 or 72–719 within the required time limits."

What the majority may be attempting to rule is that if a claim is not time barred (for any reason, including waiver) against the surety, then the claim will not be time barred against I.S.I.F. Since the application for hearing in the present case was not filed within the five-year time limit, this proposed ruling would require an implicit finding that the surety waived its rights and that the waiver is imputed to I.S.I.F. To this imputed waiver I dissent.

The I.S.I.F. is a completely separate and independent party from the surety, *see Sines v. Appel,* 103 Idaho 9, 644 P.2d 331 (1982), and is entitled to raise a legal defense regardless of another defendant's waiver. To bind the I.S.I.F. because of conduct of the employer's surety, when the I.S.I.F. was never joined as a party and had no knowledge of the proceedings, seems to be a denial of basic due process.[1]

We should not avoid the ultimate issue in the case of whether the time limits contained in I.C. §§ 72–706, –719, are applicable to claims against I.S.I.F. If not applicable, there would be no time limit barring claims against I.S.I.F., a result I find not reasonably intended by the legislature.

---

1. If the surety, because of its conduct, has caused the claimant to not file against the I.S.I.F. prior to the running of the five-year statute of limitations, it is the surety, not the I.S.I.F., which should suffer the consequences.

Many industrial accident victims could have pre-existing impairments which, with enough time and age, could degenerate to alleged total permanent disability. Unless there are some time limits, former claimants could file new claims against I.S.I.F. twenty or thirty years after an industrial accident. Workmen's compensation benefits are not intended as old-age health or retirement benefits, or to protect against the natural degeneration of the human body. These stale claims would raise impossible evidentiary questions, and the potential for fraudulent claims would be enormous. Therefore, there must be a statute of limitations on claims against I.S.I.F. It is only reasonable that the general statute of limitations contained in I.C. §§ 72–706 and –719 also apply to claims against I.S.I.F. Other jurisdictions have ruled accordingly. *Ruffin v. Albright*, 121 N.J.L. 424, 3 A.2d 135 (1938); *Grant v. Neal*, 381 S.W.2d 838 (Mo.1964); *Travelers Ins. Co. v. Austin*, 521 S.W.2d 783 (Tenn.1975); *Levi v. Second Injury Fund*, 389 P.2d 620 (Okl. 1964). The commission reasoned that since the I.S.I.F. is not specifically mentioned in the statutes, the legislature did not intend the statutes to be applicable to I.S.I.F. claims. However, neither are the surety or employer mentioned in the statutes, but this Court applies the statute of limitations to them. The statutes are applicable to "*any* such claim [for compensation]," I.C. § 72–706, and "*any* order, agreement or award," I.C. § 72–719, which clearly must include those involving the I.S.I.F.

SHEPARD, J., concurs.