772 P.2d 173

Josephine GARCIA,
Claimant–Respondent,

v.

J.R. SIMPLOT COMPANY, Employer,
Defendant–Respondent,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant–Appellant.

No. 17049.

Supreme Court of Idaho.

March 28, 1989.

Skinner, Fawcett & Mauk, Boise, for defendant-appellant, State of Idaho, Indus. Sp. Indem. Fund. William L. Mauk, argued.

John F. Greenfield, Boise, for claimant-respondent, Garcia.

Hawley Troxell Ennis & Hawley, Boise, for defendant-respondent, J.R. Simplot Co. Joseph D. McCollum, Jr., argued.

JOHNSON, Justice.

This is a worker's compensation case. The primary issue presented in this appeal is whether there was sufficient evidence to support the finding of the Industrial Commission that the total permanent disability of the claimant (Garcia) was the result of her work-related injuries combined with pre-existing permanent physical impairments. The Industrial Special Indemnity Fund (ISIF) also contests the apportionment of compensation for Garcia's disability between the employer (Simplot) and ISIF and the liability of ISIF to pay income benefits to Garcia during the time she was employed following the medical stabilization of her work-related injuries. We affirm the decision of the Commission on each of these issues.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Garcia was severely injured in 1981 while she was working on a clean-up crew at the Simplot plant. She lost her right arm above the elbow, when her jacket was caught in a machine. She also suffered four broken ribs and injured her right knee in the accident.

In 1982 Garcia returned to work at the Simplot plant. For three years she worked on the sanitation crew with another disabled worker. In 1985 Garcia was discharged by Simplot because she failed to notify her supervisor when she took a vacation.

Garcia's permanent physical impairment due to the amputation of her arm was rated at fifty-seven percent of the whole person. An orthopedic surgeon rated the permanent physical impairment due to the injury to Garcia's knee at twelve percent of a whole person. There was no permanent impairment due to her broken ribs.

At the hearing to determine the degree of Garcia's permanent disability, evidence was admitted concerning pre-existing problems with her back and with the thumb on her left hand. There was medical evidence that in 1986 Garcia had permanent physical impairment of five percent of a whole person as a result of her back problems and five percent of a whole person as a result of the laxity of her thumb. The Commission also found that there were occasions when the problems with her back and thumb interfered with Garcia's employment duties, and that each of these conditions constituted a hindrance and an obstacle to Garcia's obtaining employment.

The Commission found that Garcia had been totally permanently disabled since the accident at the Simplot plant, and that her disability was a result of the injuries to her right arm and right knee combined with her pre-existing thumb and back injuries. The Commission found that Garcia suffered permanent impairment equal to sixty-two percent of a whole person as a result of the accident at the Simplot plant and ten percent of a whole person as a result of her thumb and back injuries. Based on these findings, the Commission held Simplot liable for 86.11 percent of Garcia's permanent disability and for total temporary disability from the date of the accident until Garcia

returned to work. The Commission held ISIF liable for the difference between the amount of disability benefits for which Simplot was liable and those provided for in I.C. § 72–408, as well as the entire amount of Garcia's disability benefits following the 431 weeks of permanent disability benefits for which Simplot is liable.

ISIF filed this appeal to challenge (1) its liability under I.C. § 72–332, (2) the apportionment of the liability between Simplot and ISIF for Garcia's permanent disability, and (3) the liability of ISIF for paying benefits to Garcia during her employment by Simplot between 1982 and 1985.

## II.

### THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDING OF PRE–EXISTING PERMANENT PHYSICAL IMPAIRMENT UNDER I.C. § 72–332.

■ ISIF asserts that Garcia did not satisfy her burden in demonstrating that she suffered from a pre-existing permanent physical impairment within the meaning of I.C. § 72–332. We disagree.

I.C. § 72–332 states:

**72–332. Payment for second injuries from industrial special indemnity account.—(1)** If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the industrial special indemnity account.

(2) "Permanent physical impairment" is as defined in section 72–422, Idaho Code, provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment.

ISIF argues that its liability in this case is not supported by substantial competent evidence as to one or more of the required elements of proof under this statute. ISIF invites us to give renewed attention to the "four critical ingredients of a *prima facie* case," and the failure of Garcia and Simplot "to meet their burdens as to each: (a) whether there was indeed a pre-existing impairment, (b) whether that impairment was 'manifest', (c) whether the alleged impairment was a 'subjective hindrance', and (d) whether the alleged impairment in any way 'combines' in causing total disability." ISIF correctly cites *Royce v. Southwest Pipe of Idaho*, 103 Idaho 290, 647 P.2d 746 (1982) and *Mapusaga v. Red Lion Riverside*, 113 Idaho 842, 748 P.2d 1372 (1987) in support of these elements of a *prima facie* case for ISIF liability. However, we disagree with the argument of ISIF that there is not substantial competent evidence to support the findings of the Commission establishing the liability of ISIF.

Both medical and lay testimony indicated that Garcia had experienced problems with her back before the accident in which she lost her arm and injured her right knee. Although there is some evidence that conflicts with the finding of the Commission as to these pre-existing impairments, it is the function of the Commission, not of this Court, to weigh the evidence. In reviewing

the Commission's decision, we must view the facts and all inferences therefrom most favorably to the party who prevailed before the Commission. *Greenrod v. Parris,* 115 Idaho 109, 765 P.2d 134 (1988). We conclude that there was substantial competent evidence to support the finding of the Commission that Garcia had pre-existing permanent physical impairments.

■ ISIF argues that even though Garcia was aware of the problems with her back and thumb before the accident at the Simplot plant, these conditions were not "manifest." ISIF asserts that in order to establish that each of these conditions was manifest, Garcia must have had "a greater appreciation of an underlying, diagnosed disorder, which is both 'impairing' in its qualities and 'permanent' in its duration." We disagree. As this Court said in *Royce:* " 'Manifest' means that either the employer or employee is aware of the condition so that the condition can be established as existing prior to the injury." 103 Idaho at 294, 647 P.2d at 750. The purpose of the requirement that the condition be manifest at the time of the work-related injury is to ensure that it was pre-existing. Whether it was a "permanent impairment" is not determined by the requirement of manifestation, but by the provisions of I.C. § 72–332(2) and by *Mapusaga.*

ISIF argues that there is insufficient evidence that Garcia's back and thumb were subjective hindrances as required by I.C. § 72–332(2). ISIF is correct in citing *Mapusaga* for the proposition that the purpose of the subjective hindrance requirement "is to eliminate those claimants who have had an earlier injury, but'have not suffered any loss of *potential* earning capacity." 113 Idaho at 847, 748 P.2d at 1375. It is also true, as ISIF points out, that the Commission did not have the advantage of *Mapusaga* when it issued its opinion in this case on May 27, 1987. *Mapusaga* was issued on June 11, 1987. However, the Commission made findings that pass the subjective hindrance test of *Mapusaga.*

We have recently reiterated the two-step process announced in *Mapusaga* for determining whether a claimant has a permanent physical impairment within the meaning of I.C. § 72–332(2). *Archer v. Bonners Ferry Datsun,* 1988 W.L. 134894 (Idaho), 1988 Ida. Lexis 155, Idaho (1988). The first step in this process is to determine whether the claimant considers the pre-existing impairment an obstacle or hindrance to further employment. *Id.* Here, the Commission found: "While working for Simplot, [Garcia] attempted to work as a case sealer operator but gave up that position after one day because the lifting involved in the job caused back pain.... At times, her thumb problem interfered with her ability to perform her job trimming potatoes." There was substantial competent evidence in the form of testimony of Garcia, her daughter and employees of Simplot to support these findings. Generally, this testimony indicated the pain she had experienced in her back for several years, the limitations her back placed on her when she tried to advance to the job of case sealer, and the problems she had experienced with her thumb before the accident. We note the similarity of this evidence to the evidence this Court found sufficient in *Mapusaga* to fulfill the first requirement of I.C. § 72–332(2). There, the claimant "testified that she had lost dexterity in her middle finger and occasionally had sharp pain running up and down her arm. As a result of these problems, she testified to a limited use of her left hand while performing manual activities." 113 Idaho at 848, 748 P.2d at 1378.

The second step in the process outlined in *Mapusaga* is to determine whether a reasonable employer under the circumstances would consider the claimant's impairment to be of such a nature that any subsequent injury when combined with the impairment would more likely make the claimant totally and permanently disabled. In *Mapusaga* a vocational rehabilitation specialist testified that the condition of the claimant's arm "could reasonably cause a potential employer to be reluctant to hire the claimant because of concerns that the condition in her arm would make her a less capable worker, and more likely to be injured

again." 113 Idaho at 848, 748 P.2d at 1378. This Court found that evidence to be sufficient to support the finding by the Commission that the arm injury was a pre-existing permanent physical impairment within the meaning of I.C. § 72–332(2). *Id.*

In this case a vocational evaluator testified that the condition of Garcia's back and thumb were significant factors that would seriously limit her employability. While the Commission did not specifically address the second step in the process established in *Mapusaga*, we conclude that the evidence on this issue was as sufficient to support the Commission's finding of pre-existing permanent physical impairment as was the evidence in *Mapusaga*.

## III.

THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE COMBINATION OF GARCIA'S PRE–EXISTING IMPAIRMENTS AND HER WORK–RELATED IMPAIRMENTS, RENDERING HER TOTALLY AND PERMANENTLY DISABLED.

■ ISIF argues that the condition of Garcia's back and thumb did not combine with the loss of her arm and the impairment to her knee to render her totally and permanently disabled. ISIF contends that it is not sufficient under I.C. § 72–332(1) to show simply that a claimant is totally and permanently disabled and suffered from some pre-existing condition that can be defined as a permanent physical impairment. It is asserted that there must be proof either that the last accident aggravated and accelerated the pre-existing condition, or that the impairment due to the pre-existing condition combined, contributed and made a difference in bringing about total permanent disability. ISIF invites us to hold that the burden of proof is on the party seeking to invoke the liability of ISIF under the statute to show that the disability would not have been total "but for" the pre-existing condition. ISIF contends that Garcia is totally disabled because of the impairments and limitations of the work-related accident, together with non-medical factors, without regard to the condition of

her back and thumb. We acknowledge that the "but for" standard is the appropriate test to determine whether the total permanent disability is the result of the combined effects of the pre-existing condition and the work-related injury. We reject the argument that this standard was not met here.

In this case the Commission found that the condition of Garcia's back and thumb, combined with the injuries to her arm and knee, produced her total permanent disability. The Commission did not specify what standard it followed to determine that the combined effects required by the statute existed. We note that in *Jussila v. Department of Labor and Industries,* 370 P.2d 582 (Wash.1962), cited by ISIF in support of the "but for" standard, the finding at issue was that the total disability was entirely a result of the accident and injuries incurred during employment, "and that the earlier disability had no effect on the finding of total disability." *Id.* at 584. The Washington Supreme Court held that it was bound by that finding. Likewise, if there is substantial competent evidence here to support the finding of the Commission, that there was combination, we must accept the finding.

■ A vocational evaluator testified that taking into account the loss of Garcia's arm, the impairment to her hip, and the condition of her back and thumb, there were no jobs among the 2500 he considered that Garcia could perform. He indicated the specific ways in which the condition of her back eliminated her from some jobs and stated that the condition of her thumb prevented her from being able to handle equipment that required fine motor coordination. We accept this as substantial competent evidence that sustains the finding of the Commission that Garcia's pre-existing impairments combined with her work-related impairments to cause her total permanent disability. This evidence is sufficient to fulfill the requirement that but for the pre-existing impairments, Garcia would not have been totally and permanently disabled.

## IV.

### THE COMMISSION'S APPORTIONMENT OF LIABILITY FOR GARCIA'S DISABILITY BETWEEN SIMPLOT AND ISIF WAS CORRECT.

■ ISIF asserts that the Commission incorrectly apportioned the liability for Garcia's total permanent disability between Simplot and ISIF. We disagree.

This Court has stated "that the appropriate solution to the problem of apportioning the non-medical factors in an odd-lot case where [ISIF] is involved, is to prorate the non-medical portion of disability between the employer and [ISIF], in proportion to their respective percentages of responsibility for the physical impairment." *Carey v. Clearwater County Road Department*, 107 Idaho 109, 118, 686 P.2d 54, 63 (1984).

Here, the Commission was faced with two pre-existing impairments and two work-related impairments. The Commission used the *Carey* formula in determining that Simplot was liable for 86.11 percent of Garcia's disability, with ISIF being liable for the balance. In arriving at the respective percentages of responsibility for physical impairment the Commission relied on the testimony of an orthopedic surgeon about combining impairment ratings. This physician combined the fifty-seven percent impairment rating for the loss of Garcia's arm with the twelve percent impairment rating for her injured knee by adding fifty-seven percent to twelve percent multiplied by forty-three percent. ($57\% + (12\% \times .43)$ = 62.16%, rounded to 62%) This forty-three percent is the difference between one hundred percent and the fifty-seven percent impairment due to the loss of her arm. Using the same approach, the impairment attributed to the combined effects of Garcia's back and her thumb was determined to be ten percent. ($5\% + (5\% \times .95)$ = 9.75%, rounded to 10%) The Commission added the sixty-two percent allocated to the arm and the knee to the ten percent attributed to the back and the thumb in arriving at a total of seventy-two percent permanent physical impairment. As provided in *Carey*, the Commission then assigned 62/72 (86.11%) of the twenty-eight percent

disability attributed to non-medical factors to Simplot.

The only part of this calculation that is novel as compared to the formula developed in *Carey* is the method of combining the impairment of the arm with that of the knee and the impairment of the back with that of the thumb. The orthopedic surgeon upon whose testimony the Commission relied for the method of combining these impairments testified that this method was the one used in the combined value tables published by the American Medical Association. The evaluation of the degree of impairment is a medical question. The Commission had substantial competent evidence to find that this is the appropriate method to combine the effects of multiple work-related injuries and to combine the effects of pre-existing permanent physical impairments. Using the impairment ratings produced by this method, the apportionment of the non-medical disability factors between Simplot and ISIF was correctly calculated as required by *Carey*.

## V.

### ISIF WAS LIABLE FOR PAYMENT OF INCOME BENEFITS TO GARCIA EVEN WHILE GARCIA WAS EMPLOYED.

■ ISIF asserts that it owed no obligation for payments of any weekly benefits to Garcia from the time she resumed her employment with Simplot in 1982 until that employment terminated in 1985. This position is predicated on ISIF's interpretation of I.C. § 72–408 as providing income benefits that are payable to a disabled employee only so long as the employee is not receiving income from work that exceeds the maximum amounts allowable under the statute. We disagree.

The Commission determined that Garcia's condition became medically stable in September of 1982, when she returned to employment with Simplot, and that she was thereafter totally permanently disabled. ISIF has not appealed this decision. What ISIF has appealed is denial by the Commission of any consideration of Garcia's three-

year gainful employment in calculating the obligation of ISIF under I.C. § 72–408. This statute provides income benefits in cases of total and permanent disability.

Apparently the reason for ISIF's appeal on this issue is the decision of the Commission that Simplot is entitled to a credit for the amount of income benefits paid to Garcia during this three-year period. The income benefits that Simplot paid to Garcia during the three years of Garcia's employment from 1982 to 1985 were part of Simplot's obligation to Garcia pursuant to I.C. § 72–428 for permanent partial disability. Simplot's obligation was to make these payments for 430.55 weeks. The Commission ruled that ISIF was responsible for paying the difference between the income benefits due under I.C. § 72–408 and the income benefits paid by Simplot after Garcia returned to work in 1982.

Once Garcia was determined to be totally permanently disabled, the fact that she was able to find some employment that would provide her with income would not affect her right to receive the compensation to which she was entitled because of her disability. The liabilities of Simplot and ISIF for the benefits provided under I.C. §§ 72–408 and 72–428 were established by the determination of total permanent disability and the apportionment of the liability for this disability between them. Garcia's earnings thereafter did not diminish her right to those income benefits.

## VI.

### GARCIA IS NOT ENTITLED TO ATTORNEY FEES ON APPEAL.

Garcia asserts that ISIF should be assessed attorney fees on appeal for contesting its liability for income benefits during the three years that Garcia was employed with Simplot, from 1982 to 1985. We disagree.

■ Garcia cites I.C. § 72–804 as authority to award attorney fees against ISIF. This statute states:

72–804. **Attorney's fees—Punitive costs in certain cases.**—If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

Garcia asks us to construe ISIF to be Simplot's surety under this statute. We are unable to conclude that ISIF is Simplot's surety in the sense that I.C. § 72–804 uses the term. It is not the liability of the employer that ISIF insures, but rather the disability of the employee due to certain pre-existing physical impairments. If ISIF were not liable for a portion of Garcia's disability under I.C. § 72–332, Simplot would not be liable for this portion of the disability. Garcia would merely go uncompensated to that extent.

■ Garcia also cites I.A.R. 41 as authority to award attorney fees against ISIF. This rule does not provide the authority to award attorney fees on appeal, but only sets out the procedures for requesting attorney fees and for determining the amount of attorney fees, if this Court determines that a party is entitled to attorney fees on appeal.

We also conclude that we have no authority to award attorney fees against ISIF on appeal under I.C. § 12–121 and I.R.C.P. 54(e)(1) as we may in civil actions. *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 591 P.2d 1078 (1979). This is not a civil action, but is the appeal of a worker's compensation case. The legislation establishing the worker's compensation system

in Idaho specifically abolishes "all civil actions and civil causes of action" for personal injuries suffered by workers "in industrial and public work." I.C. § 72–201.

We find no authority for granting attorney fees against ISIF.

## VII.

## CONCLUSION.

The decision of the Commission is affirmed.

Costs are awarded to Simplot and Garcia against ISIF.

No attorney fees are awarded against ISIF.

SHEPARD, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, specially concurring.

I concur in the entire opinion of the majority except that final portion which concludes that this Court has no authority to award attorney fees in an appeal of a worker's compensation case. In the instant case I concur with the majority that attorney fees should not be awarded, but I respectfully dissent from that final portion of the majority opinion holding that this Court has no *authority* to award attorney fees in an appropriate case.

BISTLINE, Justice, dissenting.

*See, Horton v. Garrett Freightlines, Inc. and Truck Insurance Exchange,* 115 Idaho 912, 772 P.2d 119 (1989), then especially Part IX(A).