835 P.2d 1275

**Katherine Huffaker, Claimant,**

v.

**RED LION MOTOR INN–RIVERSIDE, Employer; and Birmingham Fire Insurance Company, Surety, Defendant-appellants,**

v.

**State of Idaho, INDUSTRIAL SPECIAL INDEMNITY FUND, Defendant-respondent.**

No. 18258.

Supreme Court of Idaho,
Boise Term, April 1992.

June 29, 1992.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for appellants. Thomas V. Munson argued.

Mallea & Scrivner, Boise, for respondent. Wesley L. Scrivner argued.

BAKES, Chief Justice.

Appellants Red Lion Motor Inn–Riverside and Birmingham Fire Insurance Co. appeal from an order of the Idaho Industrial Commission dismissing the Idaho Industrial Special Indemnity Fund (I.S.I.F.) as a party defendant. The Commission found that the claimant, Katherine Huffaker, was totally and permanently disabled for work, but that she did not have a pre-existing permanent physical impairment which would trigger the liability of the I.S.I.F., and therefore the entire liability was imposed on the employer and its surety.

On September 9, 1985, claimant Katherine Huffaker injured her back while working for the Red Lion Motor Inn–Riverside.[1] Huffaker underwent surgery on December 11, 1985, and was subsequently given a 20% physical impairment rating of the whole person. On March 17, 1987, the Industrial Commission entered an order finding that Huffaker's injury arose out of and in the course of her employment. The Commission retained jurisdiction to determine the extent of Huffaker's permanent physical impairment and disability.

Throughout the summer of 1987, Huffaker made several efforts to obtain suitable employment, but she was unable to keep a job because of physical limitations and lack of intellectual ability to handle her tasks. Dr. Craig Beaver, a Boise clinical psychologist, and Dr. Eric Holt, a Boise psychiatrist, evaluated Huffaker. Dr. Beaver concluded that Huffaker had an IQ of 83, representing borderline intellectual functioning. He also testified that she had very poor spelling and reading skills, her verbal reasoning and problem-solving skills were in the impaired range, and her memory skills were inefficient. Dr. Beaver testified that her longstanding cognitive difficulties were directly attributable to an or-

ganic brain syndrome. Dr. Holt agreed that the claimant suffered from borderline intellectual functioning, but he concluded that her dysfunction was not the result of a specific organic brain syndrome.

On September 20th and 27th, 1987, an Industrial Commission referee conducted hearings to determine the extent of Huffaker's permanent disability resulting from her accident. On June 19, 1989, the referee determined that Huffaker was totally and permanently disabled for work when consideration was given "to both the medical condition resulting from her industrial accident, and the claimant's level of intellectual functioning and work experience." However, the referee concluded that Huffaker did not have "any identifiable or provable brain impairment or organic brain syndrome or dysfunction which would constitute a permanent physical impairment" triggering liability on the part of the I.S.I.F. The Commission approved and adopted the referee's decision. The Employer appealed the Commission's decision. Huffaker did not join in this appeal.

After this appeal was filed, the Employer and the claimant entered into a settlement agreement which the Commission approved. The I.S.I.F. then filed a motion to dismiss the appeal, arguing that the settlement agreement effectively mooted the controversy between it and the Employer. The I.S.I.F. argued that since the claimant did not appeal the Commission's decision to dismiss the I.S.I.F., she is not a party to the present appeal, and the appeal should be dismissed. We disagree.

■ In this case, the claimant was awarded full disability payments and thus had no reason to appeal the Commission's decision. Under the I.S.I.F.'s argument, unless the claimant also appealed, an employer would have no opportunity for judicial review of the Commission's decision that no portion of the claimant's total disability payments should be allocated to the I.S.I.F. Such a result would be contrary to

---

1. Defendants Red Lion Motor–Inn Riverside and Birmingham Fire Insurance Company will

be referred to as "the Employer" throughout this opinion.

I.C. § 72–718, which provides that "[f]inal decisions [of the Idaho Industrial Commission] may be appealed to the Supreme Court," and I.C. § 72–724, which provides that "[a]n appeal may be made to the Supreme Court by such parties from such decisions and orders ... as prescribed by Rule of the Supreme Court." Accordingly, we conclude that an employer is entitled to judicial review of a decision by the Commission that no portion of the claimant's total disability payments should be allocated to the I.S.I.F., regardless of whether the claimant joins in the appeal.[2] I.C. §§ 72–718, 72–724.

The I.S.I.F. argues that, pursuant to I.C. § 72–332, if it were found to be liable, it is liable only to the claimant, not the Employer. Since the claimant and the Employer have entered into a settlement agreement through which the claimant has been completely compensated, the I.S.I.F. argues that the controversy between it and the Employer is now moot. However, as we have just held, the Employer is entitled to judicial review of the Commission's decision. Furthermore, the Employer's agreement with the claimant will not affect any potential liability of the I.S.I.F. to the claimant. If this Court were to find that the I.S.I.F. is liable to the claimant, the I.S.I.F. would pay its proportionate share of the claimant's benefits directly to her; the claimant would then reimburse the Employer the amount she had been paid by the I.S.I.F., pursuant to the agreement approved by the Commission.[3]

■ We next consider whether the Commission's holding, that the claimant's borderline intellectual functioning is not a permanent physical impairment under I.C. § 72–332, was supported by substantial, competent evidence. We hold that it was.

■ When hearing an appeal from a decision of the Idaho Industrial Commission, this court "must view the facts and all inferences therefrom most favorably to the party who prevailed before the Commission." *Garcia v. J.R. Simplot Co.,* 115 Idaho 966, 969, 772 P.2d 173, 176 (1989). When this Court reviews the Commission's factual findings, we must affirm if those findings are supported by substantial and competent evidence. *Mapusaga v. Red Lion Riverside Inn,* 113 Idaho 842, 748 P.2d 1372 (1987).

In this case, the Commission heard expert testimony presented by both sides, and each expert came to a different conclusion regarding the claimant's cognitive dysfunction. As the Commission explained:

Dr. Eric Holt, Psychiatrist, evaluated the Claimant and found no evidence of an organic brain syndrome. Furthermore, he did not feel that there was evidence of sufficient malnutrition that the Claimant's reduced intellectual function could be attributable to malnutrition. The Employer and Surety rely on the evaluations of Dr. Craig Beaver, Neuropsychologist,

---

2. In numerous Idaho cases in which the claimant was awarded total disability benefits, either the I.S.I.F. or the employer appealed the Commission's decision without the claimant joining in the appeal. *See, e.g., Garcia v. J.R. Simplot Co.,* 115 Idaho 966, 772 P.2d 173 (1989); *Mapusaga v. Red Lion Riverside Inn,* 113 Idaho 842, 748 P.2d 1372 (1987); *Waltman v. Associated Food Stores, Inc.,* 109 Idaho 273, 707 P.2d 384 (1985); *Carey v. Clearwater County Road Department,* 107 Idaho 109, 686 P.2d 54 (1984); *Hartley v. Miller–Stephan,* 107 Idaho 688, 692 P.2d 332 (1984).

3. The settlement agreement provides:
The parties acknowledge that defendant surety and defendant employer have a claim against the State of Idaho, Special Indemnity Fund with respect to the Fund's liability, if any, relative to claimant's adjudicated total

permanent disability which is pending before this Commission and before the Idaho Supreme Court.... The parties further acknowledge that this lump sum settlement and agreement is between claimant and defendants employer and surety and is exclusive of the State of Idaho, Special Indemnity Fund. It is further acknowledged by the parties hereto that the claim of defendant surety and defendant employer continues against the Fund before this Commission and the Idaho Supreme Court and is unaffected by the terms of the lump sum settlement and agreement.... By accepting this lump sum settlement and agreement, claimant agrees that any funds, monies, or benefits received by claimant from the State of Idaho, Industrial Special Indemnity Fund will be remitted to defendants.

who concluded that the Claimant did suffer from an organic brain syndrome. An organic brain syndrome means there must be some brain tissue impairment, or disfunction.

Based on his observation of the testimony of these experts, as well as all the additional testimony and evidence presented by both sides, the referee concluded that:

[T]there is no physical manifestation of the Claimant's reduced intellectual functioning. The Idaho Supreme Court has held that for a mental condition to constitute a preexisting permanent physical impairment in order to trigger liability of the Industrial Special Indemnity Fund under Section 72–332 there must be a physical manifestation of the mental disorder. *Mapusaga vs. Red Lion Inn Riverside*, 113 Idaho 842 [748 P.2d 1372]. *Hartly vs. Miller Stephen*, [sic] 107 Idaho 688 [692 P.2d 332]. The Referee finds that there is insufficient evidence of malnutrition during the Claimant's childhood to establish that the Claimant's reduced intellectual function is the result of malnutrition. Furthermore, the Referee concludes that the Claimant does not suffer any identifiable or provable brain impairment or organic brain syndrome or disfunction which would constitute a permanent physical impairment within the meaning of Section 72–332. The Referee therefor concludes that the Industrial Special Indemnity Fund would not be responsible for any contribution to the Claimant's total permanent disability and the entire responsibility must rest with the Employer and Surety.

The referee's findings of fact and conclusions of law were clearly based upon substantial evidence. As we stated in *Garcia*, "[I]t is the function of the Commission, not of this Court, to weigh the evidence." 115 Idaho at 968, 772 P.2d at 175. Although the evidence was conflicting regarding whether the claimant's cognitive difficulties were a "physical impairment," the referee was in the best position to evaluate that conflicting testimony.

Previous Idaho caselaw supports the Commission's decision. In *Hartley v. Miller–Stephan*, 107 Idaho 688, 690, 692 P.2d 332, 334 (1984), we held that a personality disorder, "lacking any bodily symptoms whatsoever, is simply too tenuous to fall within the legislature's language of I.C. § 72–332." *See also, Bruce v. Clear Springs Trout Farm*, 109 Idaho 311, 707 P.2d 422 (1985); *Mapusaga v. Red Lion Riverside Inn*, 113 Idaho 842, 748 P.2d 1372 (1987).

Accordingly, we affirm the Commission's decision to dismiss the Idaho Special Indemnity Fund as a party defendant.

JOHNSON and McDEVITT, JJ., and TROUT, J. Pro Tem., concur.

BISTLINE, Justice concurring in part, dissenting in part.

The Chief Justice is right on in disagreeing with the I.S.I.F. contention that the settlement agreement entered into between claimant and defendants did not moot the other controversy between the I.S.I.F. and the employer/defendant Red Lion Inn–Riverside. As to the second issue, there is no reason not to stand fast behind my opinion in *Hartley v. Miller Stephan*, 107 Idaho 688, 691–92, 692 P.2d at 332, 335–36 (1984). The rationale of my dissent is equally as applicable here as it was in *Hartley*.[4] Insurance companies engaging in the selling of workers' compensation insurance are clearly entitled to take a shot at the I.S.I.F. for indemnification.

The Chief Justice's opinion, with enough ready concurrences to constitute a majority opinion for the Court, accepts the referee's conclusion that there is insufficient evidence to establish any identifiable cause for the claimants' obviously reduced intellectual function. The Commission itself so recognized and adopted the referee's conclusion. The competing medical experts were a psychiatrist and a neuropsychologist, the latter being of the opinion that the

---

**4.** My opinion in *Hartley v. Miller–Stephan*, 107 Idaho 688, 692 P.2d 332 (1984), is appended hereto as "Attachment A."

claimant did suffer from an organic brain syndrome; meaning that there must be some brain tissue damage, impairment, or disfunction. The psychiatrist found no such evidence, and specifically expressed a contrary opinion. The result which is most troublesome is the total lack of any explanation for the inaction of the referee, and, in turn the Commission in seeking a third opinion. Neither exercised the statutory power to retain a neutral, knowledgeable third expert witness who would not feel compelled to testify as a retained advocate of the claimant, the defendant/surety, or for I.S.I.F., but simply to be of assistance to the Commission in its evaluation of claimant's condition, the cause, and probabilities as to her future.

If commanding a majority, my proposed conclusion, and one fair to all parties involved, would be to abate our review and remand to the Commission with directions that there be appointed a neutral expert to examine claimant Huffaker and furnish a written report wholly independent of any input from the prior testimony of the other advocating experts; thereafter, that there be a final hearing before the referee where counsel could present final arguments. Statutes are now and have been in place which provide for such a procedure. A statutory enactment, § 6266, last codified as I.C. § 43–1405, provided both for the Commission's appointing of physicians and the state's payment of fees and traveling expenses.

Although § 6266 was subsequently repealed, in its place there are now sections in tit. 72, ch. 5 of the Idaho Code, which are more encompassing. Particularly given recognition therein, per I.C. § 72–513, are provisions for appointing hearing officers, *medical* officers, counselors, examiners, and referees, plus a broad grant that the Commission is empowered to employ additional needed officers. The controversies which come before us do not evidence that the Commission is at all aware of the broad authority the legislature has granted it. These factors lead me to suggest the likelihood that this instant litigation was far more expensive in attorney fees and costs than it would have been had the Commis-

sion or the referee brought in a third expert, one upon whom the parties would agree, or if not, then an expert in the field, known to be fair and impartial. The statutory procedures are in place and available.

A benevolent act on the part of the Commission would be to utilize the services of the many competent compensation law practitioners and, in concert, ascertain how the Commission might better serve the state as a whole, and injured workmen in particular. Another proper concern of the Commission would be the degree of disparity of bargaining power and resources as between the claimant versus the surety for the employer. The very evident purpose of the Workers' Compensation Law was to benefit the worker by reducing the oppression he or she would face in litigating a tort claim of negligence and offering an administrative procedure for pursuing the claims (certain and sure relief). The legislators passed a statute which facially assured a worker that a surety guilty of resisting a claim for compensation without good cause, would be liable for payment of claimant's attorney fees. We will see how *that* turns out.

### ATTACHMENT A

My opinion in *Hartley v. Miller–Stephan,* 107 Idaho 688, 692 P.2d 332 (1984), was as follows:

BISTLINE, Justice, dissenting:

The majority today holds that a personality disorder, at least in the absence of physical symptoms or manifestations, does not qualify as a preexisting physical impairment for purposes of imposing liability on the Industrial Special Indemnity Fund. On that basis the majority reverses the Industrial Commission determination that claimant is 100% permanently disabled. Because I disagree with both the analysis employed by the majority and its conclusion even given that analysis, I respectfully dissent.

The majority correctly concludes that I.C. § 72–332, dealing with the payment obligations of the Industrial Special Indemnity Fund, incorporates by reference

I.C. § 72–422, which defines permanent impairment. I.C. § 72–422 provides as follows: "72–422. **Permanent Impairment.**— 'Permanent impairment' is *any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss,* medically, is considered stable or non-progressive at the time of evaluation...." (Emphasis added) However, the majority nonetheless persists in reading into this seemingly clear statement a non-existent requirement that the permanent impairment be physical in nature. I believe that the majority, in so doing, makes egregious error.

The legislature is, of course, free to define for itself the preexisting permanent impairments which it will consider in its compensation of disabled individuals—and it has done so quite clearly in this instance. In *Curtis v. Shoshone County Sheriff's Office,* 102 Idaho 300, 629 P.2d 696 (1981), this Court stated the following after noting that there existed (at that time), three relevant statutory definitions regarding permanent impairment, permanent disability, and the liability for both by the I.S.I.F.:

"Since these three statutory definitions (I.C. §§ 72–332(2), –422, –423) were passed simultaneously by the legislature, we can only conclude that the legislature intended that they define three different, but related, classifications. 1971 Idaho Session Laws, Ch. 124." *Id.* at 304, 629 P.2d 696.

However, I.C. § 72–332 was subsequently amended in 1981[1] to incorporate by specific reference the definition of "permanent impairment" contained in I.C. § 72–422. I cannot therefore but conclude that the legislature intended to supplant its original definition of what composed such a permanent impairment for purposes of the I.S.I.F. with that contained in I.C. § 72–422. That is, instead of "three different, but related, classifications," we now have but two— and the classification which the legislature acted to delete from its scheme, i.e., that classification speaking in terms of a permanent physical impairment, is precisely the classification upon which the majority now relies.

Turning, then, as we must, to the definition of permanent impairment contained in I.C. § 72–422, there can be no doubt that the present claimant suffers from a compensable permanent impairment. As found by the Industrial Commission and conceded *sub silentio* by the majority, claimant's personality disorder has acted as a functional abnormality which, in combination with other factors, has at least hindered and probably prevented his gainful employment. Because, under the clear import of I.C. § 72–422, this uncontroverted finding qualifies him as permanently impaired, I would affirm the award of the Industrial Commission.

However, even assuming that the phrase, permanent physical impairment," should somehow be allowed to temper the very broad language of I.C. § 72–422, I must nonetheless disagree with the proposition that personality disorders

1. At the time of *Curtis v. Shoshone County Sheriff's Office, supra,* I.C. § 72–332(2) provided the following:

"(2) As used in this law, 'permanent physical impairment' means any permanent condition, whether congenital or due to the injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed."

I.C. § 72–332(2) was amended in 1981 to read the following:

"(2) 'Permanent physical impairment' is as defined in section 72–422 Idaho Code, provided. However, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the claimant should become employed. [sic] This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the preexisting permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment."

should be excluded therefrom. We defined permanent physical impairment, in *Curtis v. Shoshone County Sheriff's Office, supra,* at 305, 629 P.2d 696, as follows:

> "'Permanent physical impairment' is any permanent condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemployment. A hindrance or obstacle to obtaining employment or reemployment would exist if the preexisting permanent conditions would reasonably cause a potential employer to be reluctant to hire a person because of concerns such as the person's preexisting condition made him a less capable worker, a greater risk in terms of the amount of potential permanent disability that the worker would suffer from an injury. Actual hindrance to one's attempts at obtaining employment is not required."

In other words, nothing whatsoever occurs in even our own prior definition of "Permanent physical impairment" to limit it to physical injury. Therefore, because the claimant in the present case meets all the criteria previously set forth by this Court and the legislature to "permanent physical impairment," I would hold that, even under this rubric, the claimant qualifies to receive compensation for his preexisting personality disorder.

And finally, I believe this Court has today sadly failed in its role and the role of the law in this area. The major purpose of the workmen's compensation law is to provide compensation to make good the loss or impairment of earning power which otherwise might (and in this case will), fall on the worker or his family. *Brock v. City of Boise,* 95 Idaho 630, 516

P.2d 189 (1973). The Workmen's Compensation Act should be accorded a broad and liberal construction, and doubtful eases should be resolved in favor of compensation, and the humane purposes which the Act seeks to serve leave no room for narrow technical construction. *Kiger v. Idaho Corp.,* 85 Idaho 424, 380 P.2d 208 (1963). In denying compensation for personality disorders on the grounds that they are not physical in nature, the Court has, in my view, fallen into precisely the type of narrow technical construction we have always sought to avoid. As Professor Larson points out in this regard, there can no longer be any excuse for "[t]his sort of compartmentalizing of the 'physical' and the 'neurotic,' as if the nerves and brain were less a part of the body than the bones and tissues...."[2] IB Larson's Workmen's Compensation Law, § 42.22 (1982). I agree and would accordingly affirm the judgment and award of the Industrial Commission.

---

**2.** Professor Larson then goes on to state the following:

> "[T]here is no really valid distinction between physical and 'nervous' injury, certainly modern medical opinion would support this view, and insist that it is no longer realistic to draw a line between what is 'nervous' and what is 'physical.' It is an old story, in the history of the law, to observe legal theory constantly adapting itself to accommodate

new advances and knowledge in medical theory. Perhaps, in earlier years, when much less was known about mental and nervous injuries and their relation to 'physical' symptoms and behavior, there was an excuse, on grounds of evidentiary difficulties, for ruling out recoveries based on such injuries, both in tort and in workmen's compensation. But the excuse no longer exists." IB Larson's Workmen's Compensation Law, § 42–23(a) (1982).